Joseph A. FENDERSON, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–947.

United States Court of Veterans Appeals.

Argued May 28, 1998.

Decided Jan. 20, 1999.

Anthony Partridge, for appellant.

Gregory W. Fortsch, with whom John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; and Carolyn F. Washington, Deputy Assistant General Counsel, were on the briefs, for the appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Joseph A. Fenderson, appeals through counsel an April 3, 1996, decision of the Board of Veterans' Appeals (Board or BVA) denying his claims for service connection for a back disorder, a psychiatric disorder, and arthritis of the left thumb, right index finger, both elbows, and right shoulder; the decision also denied an increased rating for service-connected hypertension, left-foot plantar fasciitis, and migraine headaches and granted an increased rating for left testicular atrophy. Record (R.) at 11. Additionally, the Board concluded that the veteran had never filed a Substantive Appeal as to claims for service connection for varicose veins of the right leg and for an increased rating for residuals of surgery of the right testicle and that, therefore, those matters were not properly before it. R. at 10. On November 14, 1997, the Court granted a joint motion by the parties to vacate the Board decision as to the psychiatric disorder claim and remanded that matter. The appellant then filed a brief and a reply brief, and the Secretary filed a brief. The appellant has addressed only the issues of increased rating for migraine headaches and left-foot plantar fasciitis and the appropriate disposition of the claims for service connection for right-leg varicose veins and for an increased rating for residuals of right testicular sur-gery; thus, the Court concludes that the veteran has abandoned all other matters (except for the previously remanded psychiatric disorder claim), and the Court will not address them. *See Ford v. Gober*, 10 Vet.App. 531, 535–36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed.Cir.1997). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

Following oral argument, the Court requested supplemental briefing on several issues. That briefing was completed in August 1998. For the reasons that follow, the Court will affirm the BVA decision as to the right-leg varicose-veins claim and vacate the decision as to the other three claims on appeal and remand those matters to the Board for further proceedings consistent with this opinion.

## I. Background

The veteran served on active duty in the U.S. Army from August 1980 to August 1983 and from February 1984 to April 1988. R. at 9, 75, 179. In April 1988, he filed an application for Veterans' Administration (now Department of Veterans Affairs) (VA) service-connected disability compensation or non-service-connected pension for, inter alia, heel pain, chronic pain in his testicles, "[v]asicosity [sic] ... in legs", and frequent migraines. R. at 182–84. An April 1988 VA medical examination recorded a history of chronic left-foot plantar fasciitis with persistent foot pain. R. at 186–87. (Plantar fasciitis is inflammation of the sole of the foot, associated with eosinophilia, edema, and swelling. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 609–10, 1300 (28th ed.1994).) A May 1988 VA medical examination report diagnosed headaches, "probably tension and anxiety related". R. at 190; *see also* R. at 192. In that same month, a private orthopedist assessed "chronic plantar fasciitis of the left foot". R. at 207.

The veteran received another VA medical examination in June 1988 that found, inter alia, varicose veins on the left leg but specifically not on the right leg, an "atrophic" left testis but a normal right testis, and migraine headaches. R. at 216–18. VA outpatient

progress notes from the same month recorded a history of "headache every week for 3–4 years" and noted a five-year history of varicose veins on both legs with those on the right leg being worse. R. at 219–21.

The veteran visited private-hospital emergency rooms for treatment of migraine headache pain in June 1988, November 1988, and February 1989. R. at 227, 279, 333. He also claimed that he had visited a VA outpatient clinic in December 1988, also for migraines, and that soon after that visit he "had to be rushed back into the emergency room". R. at 281. VA medical center discharge notes dated July 1988 diagnosed "atypical" migraine headaches. R. at 247. A September 1988 VA regional office (RO) decision, inter alia, granted service connection for left-foot plantar fasciitis and left-leg varicose veins, but denied a compensable rating for both conditions, denied service connection for migraine headaches, and deferred action on a left-testicle condition pending examination. R. at 252–54. That decision did not address either right-leg varicose veins or a right-testicle condition. A private medical examination in November 1988 found, inter alia, that the veteran's left testicle was atrophic but that his right testicle was normal. R. at 274–75. On November 23, 1988, he filed a Notice of Disagreement (NOD) in which he objected generally to the disposition of his claims and specifically, inter alia, to the disability rating assigned his left-foot condition and to the denial of service connection for migraines. R. at 277.

In December 1988, the VARO granted service connection for atrophy of the left testicle and assigned a noncompensable rating. The RO declined to reopen the veteran's claim for service connection for migraine headaches and for a "left-foot condition" (R. at 290), which the RO apparently distinguished from the left-foot plantar fasciitis for which he was apparently seeking an increased rating. R. at 290–92. However, in May 1989 the RO granted an increased rating for left-foot plantar fasciitis from 0% to 10% and granted service connection with a 10% rating for migraine headaches; that decision also denied an increased rating for atrophy of the left testicle. R. at 299–301. The May 1989 deci-

sion also did not discuss the right-leg varicose veins or a right-testicle condition. In July 1989, the veteran sought an increased rating for his left-testicle condition. R. at 320. Progress notes dated in July 1989 from VA medical records reflected that he had complained of headaches two to three times a week and had used Tylenol # 3 for relief. R. at 325. In December 1989, the RO confirmed the May 1989 decision. R. at 337.

The veteran filed a document that VA "[r]ecorded as [an] NOD [on] 1–8–90" that stated: "I [d]isagree with the findings in your [December 1989 decision] and wish to appeal them." R. at 344. In a VA Form 1–9 (Substantive Appeal to BVA) dated February 1990, the veteran expressed disagreement, inter alia, with the ratings he had received for his left-foot plantar fasciitis and migraine headaches. R. at 352. In addition, he stated: "Also my right testicle is not compensated for due to the [atrophy] of the left testic[le;] also the left testic[le] should be compensated for a better percentage." *Ibid.* In March 1990, he testified under oath at a hearing at the RO and argued, inter alia, that the atrophy of his left testicle was "affecting the right" one and that the right-testicle problem "wasn't even accounted for". R. at 360. He also testified that he suffered from migraine headaches two to three times a month and that the headaches lasted for three to four days. R. at 363. An April 1990 VA compensation and pension examination diagnosed left-foot plantar fasciitis with a history of recurrences of pain five to six times a month, a history of migraine headaches two to three times a month of two to three days' duration, and atrophy of the left testicle. R. at 376–76. The examiner noted: "Atrophy, right testicle, not found". R. at 375. A report of an April 1990 examination by a private orthopedist reflected: "Left foot: Sensation intact; tender over the medial plantar surface . . . [; and] pes planus and mild heel valgus of less than five degrees". R. at 381–82. The examiner recorded an impression of left-foot plantar fasciitis and noted the veteran's history of "frequent" heel pain that was "worse with activities". *Ibid.* A further VA compensation and pension examination report from May 1990 included an assessment of migraine headaches,

"usually associated with severe vomiting"; the examiner noted that headaches occurred once or twice a month, lasted two to three days, and rendered the veteran "completely prostrated" at home. R. at 389–92.

In July 1990, an RO decision, inter alia, denied service connection for a right-testicle condition as not shown on the most recent examination. R. at 405–08. In a September 1990 VA Form 1–9, the veteran stated, inter alia, that he believed that there was sufficient evidence of record to warrant service connection for a right-testicle condition. R. at 429. The Board, in a February 6, 1992, decision, inter alia, remanded to the RO for development the right-testicle and left-leg varicose-veins claims. R. at 441–46.

A record from a May 1992 private medical examination reported "mild varicosities of both lower extremities". R. at 456–57. A VA compensation and pension examination report in July 1992 included a diagnosis of "[r]esiduals of scrotal surgery for the right testicle". R. at 468. VA progress notes dated in October 1992 included an assessment of migraine headaches "in remission". R. at 547. In December 1992, the RO granted service connection for residuals of right-testicle surgery and assigned a noncompensable rating and increased to 10% the rating for the veteran's left-leg varicose veins. R. at 475–82. In a VA Form 9 dated January 1993, the veteran asserted that because he had varicose veins in "both legs" he was entitled to a higher rating than 10% and that he was entitled to a 20% rating for atrophy of both testicles. R. at 490–91. In April 1993, the RO denied service connection for varicose veins in the right leg (R. at 499–502), and the RO notified the veteran of the decision in May 1993 (Supplemental (Suppl.) R. at 1). The veteran asserted, through a VA Form 1–646 (statement of accredited representative) dated May 21, 1993, and filed for him by the American Legion, that he should be service connected for varicose veins in the right leg and that he was entitled to a 20% rating for testicular loss. R. at 504. (This document bears a stamp reading "NOTICE OF DISAGREEMENT RECORDED _____"; the blank is filled with a handwritten date of "7/13/94". *Ibid.*). In June 1993, the veteran

filed a statement in support of claim in which he objected to the denial of service connection for varicose veins in his "(L)" leg, and explained that he "was treated for varicose veins of both legs in service". R. at 506. (Apparently, the veteran had intended to object to the denial of service connection for his right-leg varicose veins, because he had in fact already received a 10% rating for his left-leg varicose veins. *See* R. at 475–82.).

In May 1994, the Board, inter alia, concluded that the issue of an increased compensable rating for residuals of surgery of the right testicle was "inextricably intertwined with" the certified left-testicle issue (R. at 525) and "remanded" to the RO the "intertwined issue of . . . residuals of surgery of the right testicle" (R. at 526); the Board also ordered the RO to develop the issue of right-leg varicose veins (R. at 526). In April 1995, the RO denied increased ratings for left-foot plantar fasciitis, migraine headaches, and residuals of surgery on the right testicle; the RO also denied service connection for varicose veins of the right leg. R. at 581–84. A Supplemental Statement of the Case (SSOC) was also issued in April 1995 (this was denominated "Supplemental" but the record on appeal (ROA) does not contain an initial Statement of the Case (SOC)) under an April 11, 1995, cover letter to the veteran. R. at 588–94.

In the April 3, 1996, BVA decision here on appeal, the Board concluded, inter alia:

> [The] issues of entitlement to service connection for varicose veins of the right leg and entitlement to an increased (compensable) evaluation for residuals of surgery of the right testicle were included in a supplemental statement of the case dated in April 1995, [and] the veteran never filed a substantive appeal with respect to these issues. . . . Therefore, these issues are not before the Board.

R. at 10. The Board also, inter alia, denied increased ratings for left-foot plantar fasciitis and migraine headaches and granted an increased rating, to 10%, for left-testicular atrophy. R. at 11.

## II. Analysis

The appellant essentially presents three arguments: (1) That he was entitled to a higher rating for left-foot plantar fasciitis and migraine headaches; (2) that the right-leg varicose-veins claim remains pending before the RO and that the RO must issue an SOC as to that claim in order to permit him to file a Substantive Appeal to the Board as to that claim; and (3) that the Board erred in concluding that his right-testicle claim was not before it. The Court will address each of these matters, in turn.

### A. Disability Rating

Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified presumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1998); *Velez v. West,* 11 Vet. App. 148, 152 (1998).

■ A disability claim includes "five common elements ... [:] status as a veteran, the existence of a disability, a connection between the veteran's service and the disability, the degree of the disability, and the effective date of the disability." *Collaro v. West,* 136 F.3d 1304, 1308 (Fed.Cir.1998); *see also Grantham v. Brown,* 114 F.3d 1156, 1160 n. 1 (Fed.Cir.1997) (Archer, C.J., concurring). Having first determined, as it did in this case with regard to migraine headaches and left-foot plantar fasciitis, that the veteran was entitled to service connection, VA had then to select the appropriate diagnostic code to rate the veteran's service-connected disabilities. Disability ratings are to be based, as far as practicable, upon "the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." 38 U.S.C. § 1155; *see also* 38 C.F.R. §§ 3.321(b)(1), 4.1 (1998); *Felden v. West,* 11 Vet.App. 427, 431 (1998); *Bruce v. West,* 11 Vet.App. 405, 409 (1998); *Dinsay v. Brown,* 9 Vet.App. 79, 85 (1996). The selection of a diagnostic code is a finding reviewed under the "arbitrary and capricious" standard. *See* 38 U.S.C. § 7261(a)(3)(A) (Court shall hold unlawful decisions by the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Smallwood v. Brown,* 10 Vet.App. 93, 98 (1997); *Arnesen v. Brown,* 8 Vet.App. 432, 439 (1995); *Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc). The degree of disability under the diagnostic code is a finding of fact subject to the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4) (Court shall hold unlawful finding of fact when such finding is "clearly erroneous"); *Smallwood,* 10 Vet.App. at 97 (diagnostic code rating determined by Board reviewed under "clearly erroneous" standard); *Johnson (Brenda) v. Brown,* 9 Vet.App. 7, 9–10 (1996) (same); *Lovelace v. Derwinski,* 1 Vet. App. 73, 74 (1990) (same). In the application of each standard of review, substantial deference is afforded to the determinations of the Board. *See Smallwood, Arnesen, Butts,* and *Lovelace,* all *supra.*

■ As an initial matter, the Court notes that both the Board (R. at 8–9) and the Secretary (Brief (Br.) at 5–7, 10–12) identified the veteran's claims regarding his migraine headaches, left-foot plantar fasciitis, and right-testicle condition as claims for increased ratings. However, the Secretary confuses the veteran's dissatisfaction with his initial ratings with claims for increased ratings. A claim for an increased rating is a new claim. *See Suttmann v. Brown,* 5 Vet. App. 127, 136 (1993) (claim for increase "based upon facts different from the prior final claim"); *Proscelle v. Derwinski,* 2 Vet. App. 629, 631–32 (1992) (in claim for increased rating "veteran claims that his service-connected disability has undergone an increase in severity *since* that prior claim" (emphasis in original)). Both the migraine-headache and the left-foot plantar-fasciitis rating claims are, as a matter of law, original claims that were placed in appellate status by NODs expressing disagreement with initial rating awards and never ultimately resolved until the Board decision on appeal. As to the right-testicle rating claim, it, too, is an origi-

nal claim placed in appellate status by an NOD (R. at 344) and a Substantive Appeal (R. at 352) (*see* parts II.A.1. and 2., and II.B.1., below). However, this distinction does not affect the application of the "clearly erroneous" standard of judicial review because that standard applies to our review of both the assignment of an initial disability rating as well as the Board's adjudication of a rating-increase claim, *see Johnson (Brenda)* and *Lovelace*, both *supra;* furthermore, "on a claim for an original *or* an increased rating, the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and it *follows that such a claim remains in controversy where less than the maximum available benefit is awarded*", *AB v. Brown*, 6 Vet. App. 35, 38 (1993) (emphasis added).

The distinction between an *original* rating and a claim for an *increased* rating may be important, however, as discussed in parts II.A.1. and 2., below, in terms of determining the evidence that can be used to decide whether the original rating on appeal was erroneous and in identifying the underlying NOD and whether VA has issued an SOC or SSOC.

*1. Migraine Headaches.* The appellant argues that the Board erred in denying an increased disability rating for service-connected migraine headaches. He was first awarded service connection for migraine headaches in the May 1989 RO decision that assigned a 10% disability rating. R. at 299–300. After receiving additional treatment records, the RO issued a confirmed rating decision in December 1989 (R. at 337), and the veteran filed a general NOD in January 1990 (R. at 344); the RO issued an SOC in January 1990 (R. at 346–50), and the veteran perfected his appeal by filing a Substantive Appeal to the BVA in February 1990 (R. at 352). The claim then remained in appellate status until the April 1996 BVA decision on appeal, in which the Board principally relied upon data from 1992 to 1994 to conclude that "[t]he record does not presently demonstrate characteristic prostrating attacks occurring on an average of once a month over the last several months thereby warranting the assignment of a disability evaluation greater

than 10%". R. at 24. The appellant argues, in sum, that evidence dating from the time of the original claim shows a greater frequency of migraine headaches, and thus warrants a higher disability rating for at least part of the period from 1988–94, and that he is entitled to a rating based on his condition at the time that his claim was presented in 1989; he also contends that the Board decision on appeal lacks a satisfactory statement of reasons or bases under 38 U.S.C. § 7104(d)(1) for its rating of that condition because it does not explain adequately why the Board rejected the veteran's earlier testimony. Br. at 15–19.

■ The Secretary relies upon the Court's holding in *Francisco v. Brown*, 7 Vet.App. 55, 58 (1994), in which the Court, citing *Brammer v. Derwinski*, 3 Vet.App. 223, 225 (1992), noted that "[c]ompensation for service-connected injury is limited to those claims which show present disability" and held: "Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance." On the basis of the supplemental briefing, the Court agrees with the appellant that the above rule is not applicable to the assignment of an initial rating for a disability following an initial award of service connection for that disability. As the Secretary conceded in his supplemental brief and the appellant agrees (Secretary's Suppl. Br. at 19; Appellant's Suppl. Br. at 18), at the time of an initial rating "separate ratings can be assigned for separate periods of time based on facts found", a practice known as "staged" ratings (Secretary's Suppl. Br. at 21 (citing 38 C.F.R. §§ 3.400, 3.500 (1998))). *See, e.g.,* 38 C.F.R. §§ 4.29, 4.30 (1998) (providing that total disability rating (100%) may be assigned in certain circumstances "without regard to other provisions of the rating schedule", and that such total rating "will be followed by appropriate schedular evaluations"; "termination of these total ratings will not be subject to 38 C.F.R. § 3.105(e) [ (1998) ]").

■ The determination of the level of disability due to service-connected migraine headaches is made under 38 C.F.R. § 4.124a,

Diagnostic Code (DC) 8100 (1998), which provides for the following ratings:

With very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability ............................ 50%

With characteristic prostrating prolonged attacks occurring on an average once a month over last several months ........................ 30%

With characteristic prostrating prolonged attacks averaging one in 2 months over last several months ...... 10%

With less frequent attacks ............. 0%

Based on the evidence of record from the time of the veteran's application in April 1988 (R. at 182–84), shortly after his separation from service, there is ample evidence of frequent migraines until at least May 1990 (*see* R. at 219 (June 1988 medical records indicating history of headache every week for 3–4 years); R. at 227, 279, 281, 333 (describing emergency visits in June, November, and December 1988 and February 1989, respectively)); R. at 325 (July 1989 VA progress notes reporting history of migraine headaches 2 to 3 times a week); R. at 363 (veteran's March 1990 sworn testimony that he suffered from migraines 2 to 3 times a month); R. at 375 (April 1990 report noting migraines 2 to 3 times a month that last 2 to 3 days); R. at 389–90 (May 1990 report noting migraine headaches 1 to 2 times a month "during which he is completely prostrated at home")). This symptomatology would permit a 30% rating for at least the time period between June 1988 and May 1990 because the prostrating nature of the attacks had already been established by the 10% rating assigned in May 1989, effective April 1988 (R. at 300).

Accordingly, the Court holds that the Board clearly erred by determining that the criteria for a disability evaluation greater than 10% were not met, and will vacate the Board decision as to this matter and remand for consideration of a staged rating consistent with this opinion. *See* 38 U.S.C. § 7261(a)(4); *Smallwood, Johnson (Brenda),* and *Lovelace,* all *supra.* Although VA progress notes from October 1992 found "migraine headaches in remission" (R. at 547) and the record shows only one subsequent complaint of a headache, in June 1993 (R. at 565), the veteran will be free on remand "to

submit additional evidence and argument" on the status of his migraine headaches before or after May 1990. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). In that regard, the Board should provide for a current neurological evaluation (with the examiner having been provided all pertinent medical records) to assess the current frequency and intensity of the veteran's migraine attacks and to provide an opinion as to their frequency and intensity from May 1990 to present. *See Goss v. Brown,* 9 Vet.App. 109, 114 (1996) (where record does not adequately reveal current state of claimant's service-connected disability, fulfillment of 38 U.S.C. § 5107(a) duty to assist requires thorough and contemporaneous medical examination); *Floyd (Charles) v. Brown,* 9 Vet.App. 88, 93 (1996) (section 5107(a) duty to assist includes medical examination that considers veteran's prior medical examinations and treatment); *Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991).

### 2. Left–Foot Plantar Fasciitis.

The appellant argues that the matter of the appropriate rating for his service-connected left-foot plantar fasciitis should be remanded because the Board decision provides an inadequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1) for its rating of that condition. The Court agrees. The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski,* 1 Vet. App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Gilbert, supra.*

The Board rated the veteran's left-foot plantar fasciitis "by analogy" under 38 C.F.R. § 4.71a, DC 5277 (1998), "for weak foot, bilateral, asymptomatic condition secondary to many constitutional conditions and characterized by atrophy of the musculature, disturbed circulation, and weakness". R. at 25. The VA rating schedule for "[w]eak foot, bilateral" provides for a minimum rating of 10%. 38 C.F.R. § 4.71a, DC 5277. However, the Board also noted that another diagnostic code, for "[f]oot injuries, other", 38 C.F.R. § 4.71a, DC 5284 (1998), could be applied to the veteran's left-foot claim. R. at 25. That latter diagnostic code provides only that a "[s]evere" foot injury be rated at "30%", a "[m]oderately severe" foot injury at 20%, and a "[m]oderate" injury at "10%". 38 C.F.R. § 4.71a, DC 5284. The Board also described 38 C.F.R. § 4.40 (1998), relating to functional loss due to inflammation or damage to parts of the exoskeletal system, and 38 C.F.R. § 4.45 (1998), regarding impairment to the joints, but chose, without explanation, not to apply those regulations. See R. at 25–26. After describing the above regulatory provisions, the Board simply concluded that the veteran's "complaints regarding the severity of the disorder are outweighed by the medical findings showing no more than a moderate disorder". R. at 26.

 "Where, as here, the claimant asserts to the BVA facts [that] would support a rating of compensable functional disability due to pain, section 4.40 must be applied to determine if a compensable rating is warranted." *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991). "[A]n evaluation of [foot] pain on movement pursuant to § 4.45 would seem in this case to be duplicative of the § 4.40 requirement that pain on use must be evaluated." *DeLuca v. Brown*, 8 Vet.App. 202, 207 (1995). In this case, although the Board did describe the provisions of §§ 4.40 and 4.45, it did not apply those regulations to the facts before it; instead, it made only the conclusory finding quoted above. This veteran has been diagnosed with foot pain that is "worse with activities" and that prevents him from playing sports, jumping, or standing for more than 10–15 minutes. R. at 381–82. The Court finds that this diagnosis is evidence of pain on movement and functional disability due to pain that requires explicit consideration under 38 C.F.R. §§ 4.40 and 4.45, and will thus remand the matter for such readjudication by the Board supported by an adequate statement of reasons or bases concerning the application of those regulations. See *DeLuca* and *Schafrath*, both *supra*.

### B. Appellate Jurisdiction

In the April 1996 BVA decision on appeal, the Board concluded that the appellant had not filed a Substantive Appeal as to his claims for service connection for right-leg varicose veins and an increased rating for a right-testicle condition. R. at 10. The Board concluded: "Therefore, these issues are not before the Board". *Ibid.*

 Appellate review of a decision by an agency of original jurisdiction (AOJ), usually the RO, is initiated by the claimant's filing a timely NOD with the AOJ and is perfected by the claimant's filing a Substantive Appeal with the AOJ. 38 C.F.R. § 20.200 (1998); *see also* 38 U.S.C. § 7105; *Brannon v. West*, 12 Vet.App. 32, 34 (1998) (noting requirements of NOD and Substantive Appeal); *Roy v. Brown*, 5 Vet.App. 554, 555 (1993); *Rowell v. Principi*, 4 Vet.App. 9, 14–15 (1993). An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1998); *see also Buckley v. West*, 12 Vet.App. 76, 81–82 (1998); *Beyrle v. Brown*, 9 Vet.App. 24, 27 (1996); *Hamilton v. Brown*, 4 Vet.App. 528, 531 (1993) (en banc), *aff'd*, 39 F.3d 1574, 1584–85 (Fed.Cir. 1994). "Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)". *Beyrle*, 9 Vet.App. at 27–28; *see also Buckley*, *supra* (citing and quoting *Beyrle* ). The Court may find, under appropriate circumstances, that a Form 9 constitutes an NOD. See *Archbold v. Brown*, 9 Vet.App. 124, 131 (1996) (citing

*Malgapo v. Derwinski,* 1 Vet.App. 397, 398–99 (1991) (holding, in portion not overruled by *Hamilton,* 4 Vet.App. at 538, that Form 1–9 can function as NOD as to claim if there is no other NOD as to that claim)); *Zevalk-ink v. Brown,* 6 Vet.App. 483, 489 (1994) (same). The Substantive Appeal in a case must be filed within one year after mailing of notification of an adverse AOJ decision or within sixty days after the AOJ mails an SOC, whichever period ends later. *See* 38 U.S.C. § 7105(b)(1); 38 C.F.R. § 20.302(b) (1998); *Archbold, supra.*

VA regulations provide: "The Substantive Appeal should set out specific arguments relating to errors of fact or law made by the [AOJ] .... [, t]o the extent feasible, ... related to specific items in the [SOC or SSOC]" and should be filed on a VA Form 9 (previously VA Form 1–9) or "correspondence containing the necessary information". 38 C.F.R. § 20.202 (1998); *see Brannon* and *Archbold,* both *supra.*

■ *1. Right–Leg Varicose Veins.* Regarding the right-leg varicose-veins claim, the RO first denied service connection for right-leg varicose veins in April 1993. R. at 499. The veteran was sent notice of this decision in an RO letter dated May 20, 1993. Suppl. R. at 1. Thereafter, the statement, dated May 21, 1993, filed on VA Form 1–646 by the veteran's accredited representative, objected to the denial of service connection for right-leg varicose veins (R. at 504), and the veteran filed a statement in support of claim (dated June 25, 1993) in which he stated:

> Reference to your letter 5–20–93. I hereby disagree with your decision to deny me service connection for varicose veins in my (L) [sic] leg. I was treated for varicose veins of both legs in service. Please send me a statement of the case.

R. at 506. No SOC then ensued, but a May 1994 BVA decision remanded the right-leg varicose-veins claim for development. R. at 526. The RO again denied service connection for right-leg varicose-veins in April 1995 (R. at 581–84), and issued, that month, an SSOC that, for the first time in an SOC, addressed the right-leg varicose-veins claim. R. at 588–94.

For purposes of deciding this appeal, we have accepted the appellant's contentions that his representative's VA Form 1–646 (R. at 504), twice-dated, "May 21, 1993", but stamped as a "NOTICE OF DISAGREEMENT RECORDED 7/13/94", was received by VA in late May or June 1993. *See* Appellant's Suppl. Br. at 4–5. The strongest argument to that effect is that the Board stated in its May 17, 1994, decision that the veteran's representative, as well as the veteran, had indicated "that the veteran wants the issue of service connection for varicose veins of the right leg included in his appeal" (R. at 525), yet there is no other document in the ROA to which that statement could refer and thus it would have to have been received before May 17, 1994, which is within one year after the RO's May 20, 1993, letter to the veteran notifying him of its decision. *See* 38 U.S.C. § 7105(b)(1); 38 C.F.R. § 20.302(b). Hence, on the assumption that the representative had learned of the RO's April 1993 denial of service connection prior to the mailing of the RO's May 20, 1993, notification letter to the veteran, or the assumption that a copy of that May 20, 1993, letter was distributed immediately to the representative at the RO and he immediately filed a written disagreement with that decision, we hold, on de novo review, that this Form 1–646 was the NOD as to the April 1993 RO denial of service connection for the veteran's right-leg varicose-veins claim. *See* 38 C.F.R. § 20.201 (defining NOD as described above); *see also Buckley* and *Beyrle,* both *supra; Tomlin v. Brown,* 5 Vet.App. 355, 357 (1993) (transcribed statement of accredited representative "undoubtedly functioned as an NOD").

■ The question next becomes whether the statement filed in June 1993 by the veteran himself, which argued that he was treated for varicose veins of both legs in service, satisfied the requirements of a VA Form 9 even though no SOC had been issued, *see Archbold,* 9 Vet.App. at 132 (written statement satisfying Substantive Appeal requirements was timely filed "since no SOC was provided to the veteran"). Taking into account all of the facts of this case, the Court holds that the veteran's June 1993 statement did not constitute a Substantive Appeal by

virtue of being the equivalent of a Form 9, as provided for in § 20.202. *Cf. Archbold, supra.* Rather, it has all the indicia of a duplicate NOD. *See* 38 C.F.R. § 20.201. First, the June 1993 statement begins by referencing the RO's May 20, 1993, letter that had transmitted the RO's April 1993 decision. Second, it expresses disagreement with the RO's denial of service connection for the condition (as noted in part I., above, we accept that the veteran's reference to "L" was a slip of the pen) and repeats what the representative had filed (perhaps unbeknownst to the veteran) in late May or early June 1993. R. at 504. Third, the June statement ends by requesting that the RO "send me a statement of the case" (R. at 506), a procedural step in the statutory and regulatory process that *precedes* the filing of the Substantive Appeal. *See* 38 C.F.R. §§ 20.200 ("[a]n appeal consists of a timely filed [NOD] in writing and, *after* a[n SOC] has been furnished, a timely filed Substantive Appeal" (emphasis added)), 20.202; *see also* 38 U.S.C. § 7105; *Brannon, Roy,* and *Rowell,* all *supra.* Finally, the veteran's representative, the American Legion, the same organization that had filed the Form 1–646, when submitting to the Board its "Written Brief Presentation" on December 5, 1995, did not list the right-leg varicose-veins claim (or the right-testicle rating claim) as one of the nine "question(s) at issue" before the Board that were specifically spelled out in that document (*see* R. at 600–02), thereby suggesting that the veteran's representative did not believe that a Substantive Appeal had been filed as to the right-leg varicose-veins claim (either by virtue of the Form 1–646 or any other document). Although we do not find that the omission of the right-leg varicose-veins claim would necessarily constitute an abandonment of that issue had it been properly placed into appellate status by a timely Substantive Appeal, the omission does lend support to the conclusion that the Form 1–646 was not intended for such purpose.

The appellant also contends that the requirement for a Substantive Appeal should be excused in this case based on the actions of the RO. He argues that the RO's April 11, 1995, letter that accompanied the April 1995 SSOC misled him into not filing a Substan-

tive Appeal (if the Court finds that he did not file one). *See* Appellant's Suppl. Br. at 16. That letter stated:

> You have filed a Substantive Appeal (VA Form 9) with respect to the [sic] some of the issues contained in the original Statement of the Case or prior Supplemental Statement of the Case. If you have not completed VA Form 9 on any other issue on appeal, you should do so now.

R. at 587. The appellant contends that a reasonable reading of this letter would be that the Form 9 that he had completed in January 1993 (R. at 490–91), and which addressed his varicose veins, would suffice. We do not agree. The RO's statement referred to the appeal to the Board and identified the Form 9 as a "Substantive Appeal". Although there is perhaps some slight ambiguity in the cover letter, the only Form 9 that the veteran had filed regarding this claim was the January 1993 Form 9 that constituted the ***original claim*** for right-leg varicose veins, a matter that had never before been raised to or adjudicated by an RO and as to which, accordingly, the filing of a Substantive Appeal would have been an impossibility. We do not agree that it would have been reasonable for the veteran to have believed that, merely because he had filed a claim on an appeal form, he did not have to file a Substantive Appeal in order to perfect his appeal of the denial of that claim after VA had adjudicated it.

We, nonetheless, do note that the clarity of the VA letter in question could be improved by changing it to refer to the filing of a Substantive Appeal rather than of a Form 9, on which a Substantive Appeal may, but need not be, filed. *See* 38 C.F.R. § 20.202 (Substantive Appeal consists of properly completed Form 9 "or correspondence containing the necessary information"); *cf. Baisden v. West,* 11 Vet.App. 215, 217–18 (1998) (noting that Court shares concern expressed by U.S. Court of Appeals for Federal Circuit in *Cummings v. West,* 136 F.3d 1468, 1474 (Fed.Cir. 1998), *cert. denied,* —— U.S. ——, 118 S.Ct. 2373, 141 L.Ed.2d 740 (1998), regarding the "overall structure" of BVA's Appeals Notice and need for its revision).

■ Accordingly, we hold that the veteran failed to perfect his appeal to the Board by filing a Substantive Appeal as to the right-leg varicose-veins claim after the RO issued an SOC as to that claim, as part of the April 1995 SSOC, and that, hence, the Board did not err when it decided that that issue was not on appeal to the Board. The Court will thus affirm the Board decision on this issue.

■ *2. Right–Testicle Condition.* Regarding the claim for an increased rating for a right-testicle condition, the history of the appellant's claim as to that condition is complex. It appears that it was part of his April 1988 claim for service connection for several conditions that referred, inter alia, to chronic pain in the "testicles ". R. at 182 (emphasis added). The September 1988 RO decision "deferred for further examination" the left-testicle claim without mentioning the right-testicle claim (R. at 252–54), and the December 1988 RO decision that granted service connection for a left-testicle condition never addressed a right-testicle condition (R. at 290–92). Thereafter, in August 1989, the veteran filed an NOD specifically seeking a higher rating for his left-testicle condition (R. at 320), but he did not address his right-testicle claim or object to the failure of the RO to adjudicate it. The RO confirmed its prior decision in December 1989 and, once again, made no mention of a right-testicle condition. R. at 337. However, the veteran's February 1990 VA Form 1–9, which perfected the appeal as to the increased rating for the left-testicle condition, apparently objected to the failure to adjudicate the right-testicle claim insofar as he stated that "my right testicle is not compensated for due to the [atrophy] of the left" testicle. R. at 352. Prompted by this statement, the RO issued a decision in July 1990 denying service connection for a right-testicle condition (R. at 405–08), and the veteran, in September 1990, filed another VA Form 1–9 in which he objected to the denial of service connection for his right-testicle condition (R. at 429).

On remand from the Board, the RO, in December 1992, granted service connection for a right-testicle condition and assigned a 0% disability rating, effective November 7, 1989. R. at 475–82. In January 1993, the veteran filed a VA Form 9 stating:

I also appeal the 0% rating for complete atrophy of the testis. The VA rating itself shows if you have atrophy of "two" testis [sic] the rating is 20%. This is my exact condition and I was rated with 0%.

R. at 490–91. The ROA does not then contain an ensuing SOC, but the veteran's representative's VA Form 1–646, dated May 21, 1993, included the following "NOTE":

In cases of the removal of one testis as the result of a ser[v]ice-incurred injury or disease, other than an undescended or congenitally undeveloped testicle, with the absence or nonfunctioning of the other testis unrelated to service, a rating of 20 percent will be assigned for the service-connected testicular loss. Test[i]s, undescended, or congenitally undeveloped is not a ratable disability.

R. at 504. It was only after another Board remand and RO decision denying an increased rating in April 1995 that the RO issued an SSOC that included the right-testicle issue. R. at 587–94.

We conclude, on de novo review, that the veteran's January 1993 Form 9 served as an NOD as to the noncompensable rating assigned by the December 1992 RO decision that awarded service connection for the right-testicle condition. This Form 9 was the first written statement filed with the RO following its initial rating decision after awarding service connection in December 1992, it sought a 20% rating, and it stated: "I also appeal the 0% rating for complete atrophy of the testis. . . . Please consider this an appeal" (R. at 491); thus, it clearly expressed the requisite "disagreement with an adjudicative determination" and "desire for appellate review". 38 C.F.R. § 20.201; *see Buckley, supra; Archbold,* 9 Vet.App. at 131; *Beyrle, Zevalkink,* and *Hamilton,* all *supra.* Thereafter, the veteran's representative filed the VA Form 1–646, dated May 21, 1993, with its "NOTE", quoted above. R. at 504. As discussed in part II.B.1., above, we have accepted that the representative's statement was received by VA in late May or June 1993, and, hence, if it was a Substantive Appeal it would have been timely filed. *See* 38 U.S.C.

§ 7105(b)(1); 38 C.F.R. § 20.302(b). Although the text of this statement might be read as fulfilling the function of a Substantive Appeal under 38 C.F.R. § 20.202 (1998); *see Archbold*, 9 Vet.App. at 132 (written statement that specifically identified issue appealed and contained specific arguments as to errors satisfied § 20.202), we need not address that issue because, as contrasted with the situation regarding the right-leg varicose-veins claim, discussed in part II.B.1., above, the RO has never issued an SOC or SSOC as to the veteran's appeal of the initial rating of his service-connected right-testicle disability. The April 1995 SSOC could not serve as an SOC as to the right-testicle rating because that SSOC mistakenly treated the right-testicle claim as one for an *"[i]ncreased evaluation for service[-]connected ... residuals of surgery to right testicle"* (R. at 588 (emphasis added); *see also* R. at 592), rather than as a disagreement with the original rating awarded, which is what it was. As our discussion in part II.A.1., above, regarding the rating assigned to the veteran's migraines, demonstrates, this distinction is not without importance in terms of VA adjudicative actions.

Hence, we are presented here with a timely NOD as to this claim but regarding which the RO has never responded by issuing an SOC as required by law and regulation. The remedy for such a situation is controlled by our opinion in *Holland v. Gober*, 10 Vet.App. 433, 436 (1997) (per curiam order) (vacating BVA decision and remanding matter when VA failed to issue SOC after claimant submitted timely NOD), and the Court will thus vacate the BVA decision as to this matter and remand to the Board "for appropriate procedural compliance, specifically the issuance of an SOC". *Ibid.* On remand, when the veteran receives an SOC as to the noncompensable rating, he will then be afforded 60 days in which to perfect an appeal to the Board by filing a Substantive Appeal, in which he can address "specific items" in that SOC pursuant to 38 C.F.R. § 20.202. *See* 38 U.S.C. § 7105(d)(3); 38 C.F.R. §§ 20.302(b); *Holland, supra; Archbold, supra.*

### III. Conclusion

■ Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court affirms the April 3, 1996, BVA decision as to its decision that the veteran's right-leg varicose-veins claim was not on appeal to the Board and vacates the BVA decision as to the veteran's migraine-headache, left-foot plantar-fasciitis, and right-testicle claims, and remands those matters for expeditious further proceedings and, as appropriate, further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1155, 7105, 7261(a); 38 C.F.R. §§ 3.321(b)(1), 3.400, 3.500, 4.1, 4.40, 4.45, 4.71a, DC 5277, 4.71a, DC 5284, 4.124a, DC 8100, 20.201, 20.202, 20.203, 20.302(b); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday*, 7 Vet.App. at 533–34. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claims. *Quarles*, 3 Vet.App. at 141. The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

HOLDAWAY, Judge, concurring in part and dissenting in part:

I do not agree with the majority's conclusion that the appellant did not receive an

adequate SOC with respect to his claim for compensation for the right-testicle condition. The RO established a 0% disability rating for the appellant's condition and the appellant filed a statement specifically disagreeing with that decision. In April 1995, the appellant did receive an SSOC which specifically stated: "Increased evaluation for service-connected residuals of surgery, right testicle, is not established." The SSOC explained that the medical evidence had not shown atrophy of the right testicle or complaints or treatment for residuals of surgery to the right testicle. For that reason, the SSOC stated that there was no reasonable basis for granting the appellant a compensable rating. The SSOC does not state that a *claim* for increased compensation was denied. From the language of the SSOC, a reasonably prudent person could have perceived that the RO had simply denied a compensable rating for the right-testicle condition. The SSOC succinctly provided reasons and bases for the RO's decision that were sufficient to permit the veteran to appeal the issue to the Board. *See* 38 C.F.R. § 19.29 (1998) (stating that an "[SOC] must be complete enough to allow the appellant to present written and/or oral arguments before the Board"). However, he did not. In fact, the appellant's service representative did not even mention the right-testicle condition in the December 1995 informal hearing presentation before the Board. *See* 38 U.S.C. § 7105(d)(3) (stating that a formal appeal setting out specific allegations of error relating to the items in the SOC must be filed in order to perfect an appeal to the Board); 38 C.F.R. § 20.202 (1998) (implementing regulation). The majority ignores the fact that the SSOC clearly placed the appellant on reasonable notice of the denial of a compensable rating. The majority requires a degree of linguistic precision in the SSOC that is simply not required by statute or regulation. On the facts of this case, it is only reasonable to conclude that the appellant understood that he had been denied a compensable rating for the right-testicle condition and abandoned that claim before the Board. Furthermore, any misclassification of the appellant's claim as a claim for an increased rating, as opposed to an original claim, after service connection

had been granted would have been harmless error. Therefore, I would affirm the BVA's determination that the appellant had not filed a substantive appeal with respect to the right-testicle claim.