http://www.va.gov/vetapp16/Files6/1644945.txt

Citation Nr: 1644945 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 13-13 328 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut

THE ISSUE

Entitlement to a compensable rating for bilateral hearing loss.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

J. Setter, Associate Counsel

INTRODUCTION

The Veteran served on active duty from June 1970 to June 1974.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut.

When evidence of unemployability is submitted during the course of an appeal from an assigned disability rating, a claim for entitlement to a total disability rating based on individual unemployability (TDIU) will be considered to have been raised by the record as "part and parcel" of the underlying claim. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In this case, there is no evidence that bilateral hearing loss prevents the Veteran from obtaining or maintaining substantially gainful employment. As such, the issue of entitlement to TDIU has not been raised.

When a Veteran files a claim for an increased rating, he is presumed to be seeking the maximum benefit under any applicable theory, including TDIU. See generally Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001); Rice, 22 Vet. App. 447. In light of this principle, entitlement to special monthly compensation (SMC) has been found to be an inferable issue anytime a veteran is requesting increased benefits. Akles v. Derwinski, 1 Vet. App. 118 (1991). 

However, the Veteran does not have a single disability rated at 100 percent with an additional disability rated at 60 percent or more, even when considering TDIU and temporary total ratings. 38 U.S.C.A. § 1114(s); Bradley v. Peake, 22 Vet. App. 280 (2008); Buie v. Shinseki, 24 Vet. App. 242 (2010); 38 C.F.R. §§ 3.350(i), 4.29, 4.30. There is no lay or medical evidence the Veteran is housebound in fact, requires aid and attendance, or that his disabilities result in loss of use of a limb, blindness or deafness. 38 U.S.C.A. §§ 1114(s), (l), (k); 38 C.F.R. § 3.350(a), (b), (i). As such, the Board will not infer the issue of entitlement to SMC.

The Board remanded the issue on appeal for additional development in September 2014. The requested examination having been provided, the directives have been substantially complied with and the matter again is before the Board. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Veteran testified before the undersigned Veterans Law Judge (VLJ) in a June 2014 Travel Board hearing held in Hartford, Connecticut; a copy of the transcript has been attached to the record.

The Board has reviewed the electronic records maintained in both Virtual VA and the Veterans Benefits Management System (VBMS) to ensure consideration of the totality of the evidence.

FINDING OF FACT

Throughout the period on appeal, the Veteran's hearing impairment has been no worse than a Level I impairment on the right and a Level I impairment on the left.

CONCLUSION OF LAW

The criteria for a compensable rating for bilateral hearing loss have not been met or approximated. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.10, 4.85, Diagnostic Code 6100, 4.86 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

A. Duty to Notify

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim, the evidence VA will obtain on the Veteran's behalf, and the evidence the Veteran is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). The notice must be provided to the Veteran prior to the initial adjudication of his claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

VA issued a VCAA letter in November 2012, prior to the initial unfavorable adjudication in March 2013. This letter advised the Veteran of what evidence was necessary to substantiate his claim, the evidence VA would obtain, the evidence the Veteran must provide, and how disability rating and effective date are determined. 

B. Duty to Assist

The duty to assist includes assisting the claimant in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The RO associated the Veteran's service and VA treatment records with the claims file. In addition, a private audiogram of the Veteran is in the claims file. No other relevant records have been identified and are outstanding. As such, the Board finds VA has satisfied its duty to assist with the procurement of relevant records. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). In this case, the Veteran was provided with VA examinations in February 2013 and July 2015. The examinations were adequate because the examiners were state licensed audiologists, a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test were provided, and the opinions noted the effect of the hearing loss disability on the Veteran's daily functioning. Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007); 38 C.F.R. § 4.85. There is no objective medical evidence, or lay allegations of, a worsening of the Veteran's hearing since the last VA examination. 

Based on the foregoing, the Board finds the examination reports to be thorough, complete, and sufficient basis upon which to reach a decision on the Veteran's claim for an increased rating for bilateral hearing loss. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-05 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Since VA has obtained all relevant identified records and provided adequate medical examinations, its duty to assist in this case is satisfied.

II. Increased Schedular Rating

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1 (2013); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). That said, higher evaluations may be assigned for separate periods based on the facts found during the appeal period. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). This practice is known as staged ratings. Id.

If the evidence for and against a claim is in equipoise, the claim will be granted. 38 C.F.R. § 4.3 (2013). A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

Assignment of a disability rating for hearing loss is derived by a mechanical application of the rating schedule to the specific numeric designations assigned after audiology testing is completed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). An examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test. 38 C.F.R. § 4.85. 

The rating schedule establishes 11 auditory hearing acuity levels based upon average puretone thresholds and speech discrimination. See 38 C.F.R. § 4.85.
"Puretone threshold average" as used in Tables VI and VIa is the sum of the puretone thresholds at 1000, 2000, 3000 and 4000 Hertz and divided by four. This average is used in all cases (including those of § 4.86) to determine a Roman numeral designation from Tables VI and VIa. 38 C.F.R. § 4.85(d).

Table VI, "Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination," is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and the puretone threshold average (vertical columns). The Roman numeral designation is located at the point where the row and column intersect. 38 C.F.R. § 4.85(b).

Table VIa, "Numeric Designation of Hearing Impairment Based Only on Puretone Threshold Average," is used to determine a Roman numeral designation (I through XI) for hearing impairment based only on puretone threshold average. Table VIa is used when the examiner certifies that the use of the speech discrimination test is not appropriate due to language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of § 4.86. 38 C.F.R. § 4.85(c).

Table VII, "Percentage Evaluations of Hearing Impairment," is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment in each ear. The horizontal rows represent the ear having better hearing and the vertical columns represent the ear having the poorer hearing. The percentage evaluation is located at the point where the row and the column intersect. 38 C.F.R. § 4.85(e).

Special provisions apply in instances of exceptional hearing loss. See 38 C.F.R. § 4.86. When the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) are all 55 decibels or more, the adjudicator must determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa in 38 C.F.R. § 4.85, whichever results in the higher numeral. 38 C.F.R. § 4.86(a). Also, when the puretone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear is evaluated separately. 38 C.F.R. § 4.86(b).

In this case, the Veteran was provided with two VA audiological examinations. The results of the February 2013 audiological examination, as measured by a puretone audiometry test, were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
25
30
20
60
65
LEFT
15
20
35
60
60

Based on these results, the average puretone threshold was 44 decibels for the right ear and 44 decibels for the left ear. See 38 C.F.R. § 4.85(d). Speech recognition was 96 percent in the right ear and 94 percent in the left ear, as measured by the Maryland CNC test. Applying these values to Table VI, the result is a Level I Roman numeral designation for each ear. As to functional impairment, the Veteran reported difficulty hearing and understanding speech without his VA-issued hearing aids.

The results of the July 2015 audiological examination, as measured by a puretone audiometry test, were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
35
40
35
65
65
LEFT
25
35
45
70
70

Based on these results, the average puretone threshold was 51 decibels for the right ear and 55 decibels for the left ear. See 38 C.F.R. § 4.85(d). Speech recognition was 96 percent in the right ear and 94 percent in the left ear, as measured by the Maryland CNC test. Applying these values to Table VI, the result is a Level I Roman numeral designation for each ear. As to functional impairment, the Veteran reported difficulty hearing others without his hearing aids.

A March 2013 private audiogram is also of record. It is not adequate for rating purposes as the W22 test was used in determining controlled speech discrimination, rather than the Maryland CNC test. See 38 C.F.R. § 4.85. 

As noted previously, in addition to objective test results, the functional effects of a hearing disability must be discussed for an audiological examination report to be adequate. Martinak, 21 Vet. App. at 455. The February 2013 VA examiner noted the Veteran reported difficulty hearing and understanding speech without his VA-issued hearing aids, while the July 2015 VA examiner noted the Veteran reported difficulty hearing others without his hearing aids. Thus, the functional impact of the Veteran's hearing loss was considered by both VA examiners. No other medical evidence concerning the Veteran's bilateral hearing loss, specifically audiograms, is of record. 

The Board has considered the Veteran's lay statements. Specifically, the Veteran has reported difficulty hearing and understanding speech without his VA-issued hearing aids. Numerous audiology appointments for hearing aid fittings and maintenance going back to 1994 are of record. While this establishes that the Veteran currently has bilateral hearing loss requiring amplification, this is not probative of the current severity of the Veteran's bilateral hearing loss.

Further, as was indicated above, rating a hearing loss disability involves the mechanical application of rating criteria to the results of specified audiometric studies. Here, the objective medical evidence of record consists of the two VA audiological examinations and a private audiological examination, none of which indicate that the Veteran's hearing loss rises to the level of a compensable rating. See 38 C.F.R. § 4.85. For these reasons, the Veteran's claim for an initial compensable rating for bilateral hearing loss is denied.

All potentially applicable codes have been considered, and there is no basis to assign an evaluation in excess of the currently assigned rating for the Veteran's bilateral hearing loss. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). Additionally, staged ratings are not warranted, as the Veteran has had a relatively stable level of symptomatology throughout the appeal. Any increases in severity were not sufficient for a higher rating for the reasons discussed above. See Fenderson, 12 Vet. App. at 126-27.

III. Extraschedular Ratings

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, 572 F.3d 1366 (Fed. Cir. 2009). The first element requires a finding that the evidence "presents such an exceptional or unusual disability picture that the available schedular evaluations for that service-connected disability are inadequate." See id. at 115. In order to determine whether a disability is "exceptional or unusual," there "must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." Id. "[I]f the [rating] criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, [and] the assigned schedular evaluation is, therefore adequate, and no referral is required." Id.

The Board finds that the schedular rating criteria contemplate the limitations and impairment caused by the Veteran's service-connected hearing loss disability. The Veteran's service-connected bilateral hearing loss disability is manifested by signs and symptoms such as hearing loss, difficulty hearing during conversations at work or at home, difficulty hearing emergency vehicles while driving, and the use of hearing aids. These signs and symptoms, and their resulting impairment, are contemplated by the rating schedule as part of the evaluation of hearing impairment. 38 C.F.R. §§ 4.85, 4.86. The rating schedule contemplates varying levels of hearing loss, as well as exceptional patterns of hearing loss. See id.

Given the variety of ways in which the rating schedule contemplates hearing impairment, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. The Veteran's reported difficulty with understanding conversations and other daily functional impairments all stem directly from the severity of the Veteran's hearing loss, puretone threshold averages and speech recognition impairment, all of which are directly contemplated when determining the appropriate rating for hearing loss under Table VI and Table VII. There is nothing exceptional or unusual about the Veteran's bilateral hearing loss because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

Finally, a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). In this case, the Veteran is service connected for bilateral herniation of the peroneus longus muscle, tinnitus, and bilateral hearing loss. The Veteran has not alleged that his currently service-connected disabilities combine to result in additional disability or symptomatology that is not already contemplated by the rating criteria for each individual disability.

Further, there is no medical evidence indicating that the Veteran's bilateral hearing loss combines or interacts with his other service-connected disabilities in such a way as to result in further disabilities, functional impairment, or additional symptomatology not accounted for by the rating criteria applicable to each disability individually. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

ORDER

Entitlement to a compensable rating for bilateral hearing loss is denied.

____________________________________________
K. J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs