Citation Nr: 1214068 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 08-24 297 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an increased evaluation for status post fracture of the mandible with temporomandibular joint dysfunction, currently evaluated as 40 percent disabling.

2. Entitlement to an initial evaluation in excess of 50 percent for sleep apnea.

3. Entitlement to an initial evaluation in excess of 10 percent for a speech disorder.

4. Entitlement to a compensable initial evaluation for a digestive disorder.


WITNESSES AT HEARING ON APPEAL

Veteran and his spouse



ATTORNEY FOR THE BOARD

M. J. In, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1974 to January 1977. This matter comes properly before the Board of Veterans' Appeals (Board) on appeal from September 2006, October 2011 and January 2012 rating decisions by the Department of Veterans Affairs (VA) Regional Office in Winston-Salem, North Carolina (RO). 

The issue of entitlement to an increased evaluation for status post fracture of the mandible with temporomandibular joint dysfunction, currently evaluated as 40 percent disabling, is addressed in the remand portion of the decision below and is remanded to the RO via the Appeals Management Center in Washington, DC.


FINDINGS OF FACT

1. Since the initial grant of service connection, the Veteran's sleep apnea has been manifested by nonrestorative sleep, daytime sleepiness, heavy snoring, and respiratory events with frequent oxygen desaturation in his sleep. In addition, the Veteran's sleep apnea has required the use of a breathing assistive device, such as a continuous positive airway pressure machine (CPAP).

2. Since the initial grant of service connection, the Veteran's service-connected speech disorder has been manifested by slurred speech due to limited opening of the mandible, but not by hoarseness, inflammation of cords or mucous membranes, thickening of nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy.

3. Since the initial grant of service connection, the Veteran's digestive disorder has been manifested by difficulty in chewing certain foods and the resultant indigestion, and it is not manifested by pulling pain on attempting work or aggravated by movement of the body, or occasional episodes of colic pain, nausea, constipation , diarrhea, or abdominal distention; delayed motility of barium meal and less frequent and less prolonged episodes of pain; or definite partial obstruction shown by X-ray study, frequent and prolonged episodes of severe colic distension, nausea, or vomiting following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage


CONCLUSIONS OF LAW

1. The criteria for an initial evaluation in excess of 50 percent have not been met for sleep apnea. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. § 4.97, Diagnostic Code 6847 (2011).

2. The criteria for an initial evaluation in excess of 10 percent have not been met for a speech disorder. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. § 4.97, Diagnostic Code 6521-6516 (2011).

3. The criteria for an initial compensable evaluation for a digestive disorder have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 4.114, Diagnostic Code 7301 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions under the Veterans Claims Assistance Act of 2000 (VCAA). 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Veteran's claims concerning the proper disability ratings to be assigned to his service-connected disabilities arise from his disagreement with the initial disability evaluations assigned to these conditions following the grant of service connection. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

The duty to assist the Veteran has been satisfied in this case. The RO has obtained the Veteran's service treatment records, as well as identified VA and private medical records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Pursuant to the Board's July 2010 remand, VA examinations were accomplished in December 2011 to ascertain the current severity of the Veteran's sleep apnea, speech disorder and digestive disorder. The VA examinations were performed by VA examiners who had reviewed the Veteran's claims file, examined the Veteran, and included sufficient detail as to the current severity of his service-connected disabilities. The Board therefore concludes that these examinations are adequate for evaluation purposes. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Accordingly, the Board concludes that there has been substantial compliance with its July 2010 remand. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (finding that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis herein focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (holding that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2011). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2011). In resolving this factual issue, the Board may only consider the specific factors as are enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992).

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2011). Consideration of the whole recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999).

Where a veteran appeals the initial rating assigned for a disability, evidence contemporaneous with the claim and the initial rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an original rating on appeal was erroneous." See Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time. Id.

Sleep Apnea

An October 2011 rating decision granted service connection for sleep apnea as secondary to service-connected status post fracture of the mandible with temporomandibular joint dysfunction; and a noncompensable evaluation was assigned temporarily. The Veteran filed a timely notice of disagreement as to the initial evaluation assigned for his service-connected sleep apnea. Subsequently, by a January 2012 rating decision, a 50 percent evaluation was assigned under the provisions of 38 C.F.R. § 4.97, Diagnostic Code 6847, effective from October 8, 2010. Because the increase in the evaluation of the Veteran's sleep apnea does not represent the highest possible evaluation available for the condition, the claim remains in appellate status. See AB v. Brown, 6 Vet. App. 35 (1993) (where a claimant has filed a notice of disagreement as to an RO decision assigning a particular rating, a subsequent RO decision assigning a higher rating, but less than the maximum available benefit, does not abrogate the pending appeal).

The Veteran's sleep apnea is evaluated under the provisions of 38 C.F.R. § 4.97, Diagnostic Code 6847. Under Diagnostic Code 6847, a 50 percent disability rating will be assigned when sleep apnea requires use of breathing assistance device such as CPAP machine. A 100 percent disability rating is assignable when sleep apnea is manifested by chronic respiratory failure with carbon dioxide retention or cor pulmonale, or when it requires tracheostomy. 38 C.F.R. § 4.97, Diagnostic Code 6487.

In an August 2008 private sleep study report, the Veteran complained of non-restorative sleep and daytime sleepiness. Following a polysomnogram study, the impressions were severe obstructive sleep apnea/hypopnea syndrome; respiratory events with frequent oxygen desaturations; severe nonpositional snoring; heavy snoring; and abnormal sleep architecture related to respiratory events. A CPAP titration was recommended in light of the severity of the Veteran's sleep apnea/hypopnea syndrome.

An October 2010 VA examination report stated that the Veteran's service-connected jaw fracture caused shifting of the mandible from its original position and this small movement along with the size of his tongue and the amount of tissue in the throat area could contribute to the Veteran's sleep apnea.

The Veteran was afforded a VA examination in January 2012. The VA examiner noted a diagnosis of obstructive sleep apnea based on the August 2008 sleep study. The examiner noted that continuous medication was not required for control of the Veteran's sleep disorder condition; however, use of a breathing assistance device, such as CPAP machine, was required. The examiner indicated that the Veteran currently did not have any finding, signs or symptoms attributable to sleep apnea, such as persistent daytime hypersomnolence, evidence of chronic respiratory failure with carbon dioxide retention, cor pulmonale, or need for tracheostomy. The examiner found that the Veteran's sleep apnea did not impact his ability to work. In this regard, the Veteran reported in the October 2010 VA examination report that he was currently working full time as a driver.

After reviewing the evidence of record, the Board concludes that an initial evaluation in excess of 50 percent is not warranted for the Veteran's service-connected sleep apnea. The evidence of record reflects that the Veteran's sleep apnea has been manifested by nonrestorative sleep, daytime sleepiness, heavy snoring and respiratory events with frequent oxygen desaturations in his sleep. In addition, the medical evidence shows that the Veteran has required CPAP for his sleep apnea. However, as there is no evidence that the Veteran's service-connected sleep apnea causes chronic respiratory failure with carbon dioxide retention or cor pulmonale, or that it requires tracheostomy, an initial evaluation in excess of 50 percent is not for application. 38 C.F.R. § 4.97, Diagnostic Code 6847. To that effect, the January 2012 VA examiner specifically noted that the Veteran currently did not show any persistent daytime hypersomnolence, evidence of chronic respiratory failure with carbon dioxide retention, cor pulmonale, or need for tracheostomy, that was attributable to sleep apnea. Nor does the Veteran contend that his sleep apnea is manifested by any of the symptoms required for the assignment of the next higher evaluation for sleep apnea. See id. Accordingly, an initial evaluation in excess of 50 percent is not warranted for the Veteran's service-connected sleep apnea.

Generally, evaluating a disability using either the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2011). However, because the ratings are averages, it follows that an assigned rating may not completely account for each individual Veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b) (2011). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009); see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun, 22 Vet. App. at 115. If the criteria under the Rating Schedule reasonably describe the Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is adequate, and no referral is required.

The Board finds that the Veteran's disability picture due to his service-connected sleep apnea is not so unusual or exceptional in nature as to render the currently assigned 50 percent disability rating inadequate. The Veteran's service-connected sleep apnea is evaluated under 38 C.F.R. § 4.97, Diagnostic Code 6847, the criteria of which is found by the Board to specifically contemplate the Veteran's level of disability and symptomatology due to this disability. The currently assigned 50 percent evaluation under Diagnostic Code 6847 contemplates requirement of use of breathing assistance device such as CPAP machine. There is no evidence of chronic respiratory failure with carbon dioxide retention, cor pulmonale, or the need for tracheostomy due to the Veteran's service-connected sleep apnea. When comparing this disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's symptoms are more than adequately contemplated by the current 50 percent disability rating assigned for his service-connected sleep apnea.

Staged ratings have been considered. The evidence shows no distinct periods of time since the initial grant of service connection, during which the Veteran's sleep apnea varied to such an extent that a rating greater than a 50 percent evaluation would be warranted. Thus, staged ratings are not in order. See Fenderson, 12 Vet. App. at 126.

In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim for an initial evaluation in excess of 50 percent for service-connected sleep apnea, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Speech Disorder

The October 2011 rating decision granted service connection for a speech disorder as secondary to service-connected status post fracture of the mandible with temporomandibular joint dysfunction; and a noncompensable evaluation was assigned temporarily. The Veteran filed a timely notice of disagreement as to the initial evaluation assigned for his service-connected speech disorder. Subsequently, by a January 2012 rating decision, a 10 percent evaluation was assigned under the provisions of 38 C.F.R. § 4.97, Diagnostic Codes 6521-6516 (hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned, the additional code is shown after the hyphen), effective from October 8, 2010. Because the increase in the evaluation of the Veteran's speech disorder does not represent the highest possible evaluation available for the condition, the claim remains in appellate status. See AB, 6 Vet. App. at 39.

The October 2010 VA examination report noted the Veteran's history of difficulty in opening the mouth and talking. Regarding speech difficulty, it was noted that the Veteran was unable to speak clearly enough to be understood at least half of the time but not all of the time. The examiner stated that the Veteran was not talking clearly due to limited opening of the jaw, which was caused by the temporomandibular joint pain and resultant slurring of his speech.

On the December 2011 VA examination report, the VA examiner noted a diagnosis of dysarthria. The examiner indicated that the Veteran did not have chronic sinusitis, chronic laryngitis, laryngectomy, aphonia, laryngeal stenosis, pharygeal injury or any other pharyngeal conditions. No symptoms of hoarseness, inflammation of vocal cords or mucous membrane, thickening of nodules of vocal cords, submucous infiltration of vocal cords were shown. The Veteran did not have deviated nasal septum, or benign or malignant neoplasm or metastases related to the diagnosis of dysarthria. The examiner found that the Veteran's sinus, nose, throat, larynx or pharynx condition did not impact his ability to work.

A 10 percent rating is currently assigned for the Veteran's speech disorder pursuant to § 4.97, Diagnostic Code 6516, which sets forth the criteria for evaluating chronic laryngitis. His speech disorder is rated as analogous to chronic laryngitis, under 38 C.F.R. § 4.20. Under Diagnostic Code 6516, a 10 percent rating is assigned for hoarseness, with inflammation of cords or mucous membrane. 38 C.F.R. § 4.97, Diagnostic Code 6516. A 30 percent rating is assigned for hoarseness, with thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy. Id.

The Board finds that the 10 percent rating currently assigned to the Veteran's speech disorder, manifested by slurred speech due to limited opening of the mandible, is appropriate and there is no basis for a higher evaluation. In that regard, at most the medical evidence of record contains slurred speech due to limited opening of the jaw in the October 2010 VA examination report, and a diagnosis of dysarthria in the December 2011 VA examination report. Additionally, at the November 2009 hearing before the Board, the Veteran indicated that he had problems talking and tried to avoid talking due to jaw and facial pain. There is no evidence of record that the Veteran has hoarseness, inflammation of cords or mucous membranes, or thickening of nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy, such that a higher rating is warranted under § 4.97, Diagnostic Code 6516. The disability picture presented does not more nearly approximate the criteria for a 30 percent rating. Moreover, the Board finds no other related diagnostic code provision that would allow for a higher rating.

The Board finds that the Veteran's disability picture is not so unusual or exceptional in nature as to render the disability ratings assigned herein inadequate. The Veteran's service-connected speech disorder is evaluated under 38 C.F.R. § 4.97, Diagnostic Code 6516, the criteria of which is found by the Board to contemplate the Veteran's level of disability and symptomatology. The Veteran's service-connected speech disorder is manifested by slurred speech due to limited opening of the mandible, and it is not manifested by hoarseness, inflammation of cords or mucous membranes, or thickening of nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy. When comparing this disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's symptoms are more than adequately contemplated by the currently assigned disability rating for his service-connected speech disorder.

While there may have been day-to-day fluctuations in the manifestations of the Veteran's service-connected speech disorder, the evidence shows no distinct periods of time since the initial grant of service connection, during which the Veteran's speech disorder varied to such an extent that a rating greater than that assigned would be warranted. Thus, staged ratings are not in order. See Fenderson, 12 Vet. App. at 126.

In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert, 1 Vet. App. at 54.

Digestive Disorder

The October 2011 rating decision granted service connection for a digestive disorder as secondary to service-connected status post fracture of the mandible with temporomandibular joint dysfunction; and a noncompensable evaluation was assigned under the provisions of 38 C.F.R. § 4.114, Diagnostic Code 7301, effective from October 8, 2010. The Veteran filed a timely notice of disagreement as to the initial evaluation assigned for his service-connected digestive disorder.

The October 2010 VA examination report noted the Veteran's history of difficulty in chewing certain foods. The Veteran was only opening his mouth to 30 mm from incisal edge to incisal edge, which limited his ability to chew his food thoroughly and digest it properly. He was having digestive problems and had been impacted on multiple occasions due to inadequate chewing of his food.

On the December 2011 VA examination report, the VA examiner noted a diagnosis of dyspepsia. The examiner indicated that the Veteran did not have recurrent episodes of severe symptoms, abdominal pain, anemia, weight loss, nausea, vomiting, hematemesis or melena. No incapacitating episodes due to signs or symptoms of any stomach or duodenum condition were reported. No hypertrophic gastritis, postgastrectomy syndrome or vagatomy with pyloroplasty or gastroenterostomy were shown. The examiner found that the Veteran's digestive disorder did not impact his ability to work.

Digestive disorders are rated under 38 C.F.R. § 4.114, Diagnostic Codes 7200 through 7345. The RO rated the Veteran's digestive disorder as analogous to adhesions of the peritoneum under 38 C.F.R. § 4.114, Diagnostic Code 7301. See 38 C.F.R. § 4.20. A note to this diagnostic code provides that rating for adhesions will be considered when there is history of operative or other traumatic or infectious (intra-abdominal) process, and at least two of the following: disturbance of motility, actual partial obstruction, reflex disturbances, or presence of pain. Under this diagnostic code, a noncompensable rating is warranted for mild peritoneal adhesions. A 10 percent rating is warranted for moderate adhesions with pulling pain on attempting work or aggravated by movement of the body, or occasional episodes of colic pain, nausea, constipation (perhaps alternating with diarrhea), or abdominal distention. A 30 percent rating is warranted for moderately severe adhesions with partial obstruction manifested by delayed motility of barium meal and less frequent and less prolonged episodes of pain. The maximum schedular rating of 50 percent is warranted for severe adhesions, with definite partial obstruction shown by X-ray study, frequent and prolonged episodes of severe colic distension, nausea, or vomiting following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage.

The Board finds that the currently assigned initial evaluation for the Veteran's digestive disorder, manifested by difficulty in chewing certain foods and the resultant indigestion is appropriate and there is no basis for a higher evaluation. In that regard, at most the medical evidence of record contains inability to chew food thoroughly and digest it properly due to limited opening of the mandible in the October 2010 VA examination report, and a diagnosis of dyspepsia in the December 2011 VA examination report. Additionally, in the November 2009 hearing before the Board, the Veteran testified that he experienced grinding and popping sensation in the mandible when chewing food. There is no evidence of record that the Veteran experiences pulling pain on attempting work or aggravated by movement of the body, or occasional episodes of colic pain, nausea, constipation (perhaps alternating with diarrhea), or abdominal distention; delayed motility of barium meal and less frequent and less prolonged episodes of pain; or definite partial obstruction shown by X-ray study, frequent and prolonged episodes of severe colic distension, nausea, or vomiting following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage, such that a compensable rating is warranted under § 4.114, Diagnostic Code 7301. To that effect, the December 2011 VA examiner specifically indicated that the Veteran did not have recurrent episodes of severe symptoms, abdominal pain, anemia, weight loss, nausea, vomiting, hematemesis or melena. As such, the disability picture presented does not more nearly approximate the criteria for a compensable rating.

The Board has considered whether a compensable rating is warranted under other diagnostic codes. See Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). However, the Board finds a compensable evaluation for duodenal or marginal ulcer under Diagnostic Codes 7305 or 7306 is not warranted as no recurring symptoms of any kind of ulcer have been shown. Furthermore, the Board finds no other related diagnostic code provision that would allow for a compensable rating.

The Board finds that the Veteran's disability picture is not so unusual or exceptional in nature as to render the current disability rating inadequate. The Veteran's service-connected digestive disorder is evaluated under 38 C.F.R. § 4.114, Diagnostic Code 7301, the criteria of which is found by the Board to contemplate the Veteran's level of disability and symptomatology. The Veteran's service-connected digestive disorder is manifested by difficulty in chewing certain foods and the resultant indigestion and it is not manifested by pulling pain on attempting work or aggravated by movement of the body, or occasional episodes of colic pain, nausea, constipation (perhaps alternating with diarrhea), or abdominal distention; delayed motility of barium meal and less frequent and less prolonged episodes of pain; or definite partial obstruction shown by X-ray study, frequent and prolonged episodes of severe colic distension, nausea, or vomiting following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage. When comparing this disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's symptoms are adequately contemplated by the currently assigned disability rating for his service-connected digestive disorder.

While there may have been day-to-day fluctuations in the manifestations of the Veteran's service-connected digestive disorder, the evidence shows no distinct periods of time since the initial grant of service connection, during which the Veteran's digestive disorder varied to such an extent that a compensable rating would be warranted. Thus, staged ratings are not in order. See Fenderson, 12 Vet. App. at 126.

In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert, 1 Vet. App. at 54.


ORDER

An initial evaluation in excess of 50 percent for sleep apnea is denied.

An initial evaluation in excess of 10 percent for a speech disorder is denied.

An initial compensable evaluation for a digestive disorder is denied.


REMAND

In the October 2011 rating decision, the RO granted an increased evaluation of 40 percent for the Veteran's service-connected status post fracture of the mandible with temporomandibular joint dysfunction. The currently assigned 40 percent evaluation is the maximum schedular rating available under the provisions of 38 C.F.R. § 4.150, Diagnostic Code 9905. However, the RO failed to consider the provisions of an extraschedular rating for this disability. See 38 C.F.R. § 3.321(b) (2011). As the RO has not adjudicated on this issue, the Board cannot reach the merits of the Veteran's claim for an increased evaluation for status post fracture of the mandible with temporomandibular joint dysfunction. Bernard v. Brown, 4 Vet. App. 384 (1993). Accordingly, the claim is remanded to the RO for consideration of an extraschedular evaluation. 

Accordingly, the case is remanded for the following action:

1. The RO must review the claims file to ensure that all required notification and development action is completed with regard to the Veteran's claim of entitlement to an increased evaluation for status post fracture of the mandible with temporomandibular joint dysfunction, currently evaluated as 40 percent disabling. The RO must ensure that the notification requirements and development procedures contained in 38 U.S.C.A. §§ 5102, 5103, 5103A, and 5107 are fully complied with and satisfied.

2. After undertaking any other development deemed necessary in addition to that specified above with regard to the Veteran's claim of entitlement to an increased evaluation for status post fracture of the mandible with temporomandibular joint dysfunction, the RO must readjudicate the Veteran's claim addressing whether the Veteran's claim should be referred to the Chief Benefits Director or the Direct of VA Compensation and Pension Service for assignment of an extraschedular rating under the provisions of 38 C.F.R. § 3.321(b)(1) (2011). After the Veteran has had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

No action is required by the Veteran until he receives further notice; however, he may submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).



_________________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs