Citation Nr: 1456938 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 05-34 928 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for a left upper extremity disability, to include as secondary to herbicide exposure and/or to service-connected diabetes mellitus.

2. Entitlement to service connection for a right upper extremity disability, to include as secondary to herbicide exposure and/or to diabetes mellitus.

3. Entitlement to a rating in excess of 20 percent for type II diabetes mellitus.

4. Entitlement to a rating in excess of 10 percent for left lower extremity peripheral neuropathy.

5. Entitlement to a rating in excess of 10 percent for right lower extremity peripheral neuropathy.

6. Entitlement to a compensable rating for microalbuminuria.

7. Entitlement to an effective date prior to June 8, 2011, for the award of service connection for left lower extremity peripheral neuropathy.

8. Entitlement to an effective date prior to June 8, 2011, for the award of service connection for right lower extremity peripheral neuropathy.

9. Entitlement to an effective date prior to June 8, 2011, for the award of service connection for microalbuminuria.


REPRESENTATION

Veteran represented by: Virginia A. Girard-Brady, Esq.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

L. B. Yantz, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from October 1966 to October 1969. The matters of service connection for left and right upper extremity disabilities are before the Board of Veterans' Appeals (Board) on remand from the United States Court of Appeals for Veterans Claims (Court). Those matters were originally before the Board on appeal from a November 2004 rating decision of the Columbia, South Carolina Department of Veterans Affairs (VA) Regional Office (RO), which (in pertinent part) denied service connection for the disabilities. [The record is now in the jurisdiction of the Roanoke, Virginia RO.] In June 2006, a Travel Board hearing was held before the undersigned; a transcript of the hearing is associated with the record. A February 2009 Board decision denied service connection for left and right upper extremity disabilities. The Veteran appealed that decision to the Court. In March 2010, the Court issued an order that vacated the February 2009 Board decision with respect to the denial of service connection for left and right upper extremity disabilities, and remanded those matters for readjudication consistent with the instructions outlined in a February 2010 Joint Motion for Remand (Joint Motion) by the parties. After remanding those matters for additional development in September 2010, October 2011, April 2012, and September 2012, the Board (in a May 2013 decision) denied service connection for left and right upper extremity disabilities. The Veteran appealed that decision to the Court. In June 2014, the Court issued an order that vacated the May 2013 Board decision with respect to the denial of service connection for left and right upper extremity disabilities, and remanded those matters for readjudication consistent with instructions outlined in a June 2014 Joint Motion by the parties.

The matters of the ratings for type 2 diabetes mellitus, and left and right lower extremity peripheral neuropathy, and microalbuminuria, as well as the claims seeking earlier effective dates for awards of service connection for left and right lower extremity peripheral neuropathy, and microalbuminuria, are before the Board on appeal from a July 2011 rating decision of the Roanoke RO. In December 2012, an informal conference was held before a Decision Review Officer (DRO) at the RO.

In June 2014 the RO issued a statement of the case (SOC) regarding a claim of service connection for ischemic heart disease. The Veteran did not file a substantive appeal in the matter; hence, it is not before the Board. See 38 C.F.R. §§ 20.200, 20.302 (2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if action on his part is required.


REMAND

On review of the record, the Board has found that further development is needed for VA to fulfill its duties mandated under the VCAA.

Service Connection Claims

The Veteran contends that he currently has left and right upper extremity disabilities (manifested by numbness and tingling in both arms) which are secondary exposure to herbicides in service and/or to his diabetes mellitus.

In February 2012, a VA physician opined that it is not as least likely as not that the Veteran's service-connected diabetes mellitus caused or aggravated his upper extremity numbness, pain, or tingling. The physician also opined that it is not likely as not that the Veteran has had a disorder of either/both upper extremities manifested by numbness, pain, and/or tingling that is related to service. The physician noted that, although the Veteran complained of symptoms related to his right upper extremity, he did not mention numbness and tingling and paresthesias in his diabetic appointments consistent with diabetic peripheral neuropathy. The physician also noted that the Veteran's neurologic examinations of his upper extremities were consistently normal. The physician stated that, without complaints of bilateral numbness, tingling, and paresthesias of the upper extremities with close follow-up of his diabetes, the physician saw no evidence of a diagnosis of upper extremity peripheral neuropathy related to diabetes. The physician also stated that the Veteran had a normal examination at discharge from the military and no complaints or notes relating to upper extremities in the record within one year following service discharge.

In July 2012, a different VA physician rendered a medical opinion that the Veteran's claimed bilateral upper extremity disabilities are less likely than not (less than 50 percent probability) proximately due to or the result of his service-connected diabetes mellitus. The physician discussed all of the relevant medical evidence of record (including February 2004 and February 2006 private treatment records documenting upper extremity numbness, pain, and tingling) and concluded that, on the basis of this history and the documented abnormalities in the Veteran's cervical spine, the Veteran's reported upper extremity symptoms were secondary to a chronic disability of the cervical spine, specifically degenerative arthritis. The physician opined that there is no evidence to link this disability to the Veteran's term of military duty, which occurred approximately 34 years earlier. The physician noted that a neurological examination of the Veteran's upper extremities in June 2011 was normal. The physician concluded that there were sufficient abnormalities found on cervical spine radiological studies to explain the reported upper extremity symptoms without diabetic involvement being necessarily implicated. Therefore, the physician opined that the upper extremity symptoms were less likely than 50 percent caused or aggravated by the Veteran's military service or his diabetes mellitus.

The June 2014 Joint Motion found that these two VA medical opinions were inadequate with regard to the question of direct service connection (in that neither opinion addressed whether any current left or right upper extremity disability is related to the Veteran's conceded Agent Orange exposure in service) as well as the question of secondary service connection (in that neither opinion provided an adequate rationale regarding the question of whether any current left or right upper extremity disability was aggravated by the Veteran's service-connected diabetes mellitus). Consequently, the Board erred in its May 2013 decision by relying on these VA medical opinions to deny the claims. Therefore, a new examination to secure adequate medical opinions is now necessary. See Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007).

Increased Rating Claims

The Veteran has not been afforded a VA examination to assess his service-connected diabetes mellitus, left and right lower extremity peripheral neuropathy, or microalbuminuria since June 2011 (more than three and a half years ago). Given his complaints of increased severity, a contemporaneous examination to assess these disabilities is necessary. In addition, any outstanding reports of VA treatment must be secured, as such records may identify a period of time during which a "staged" increased rating may be warranted. See Fenderson v. West, 12 Vet. App. 119.

Earlier Effective Date Claims

The awards of service connection for left and right lower extremity peripheral neuropathy, and microalbuminuria (all as secondary to diabetes mellitus) were made effective June 8, 2011, the date of a VA examination. The AOJ determined that June 8, 2011 was the earliest date when it was factually ascertainable that such disabling effects of the Veteran's diabetes were shown. However, as outlined below, the record contains evidence to suggest that the Veteran may have experienced symptoms of his now service-connected left lower extremity peripheral neuropathy, right lower extremity peripheral neuropathy, and microalbuminuria prior to June 8, 2011.

Regarding the now service-connected left and right lower extremity peripheral neuropathy, the following pertinent evidence is of record: In November 1997, a private treatment record noted his complaints of some numbness in the left lateral leg along the distribution of the lateral femoral cutaneous nerve, with a small nodule noted in the L2 area; meralgia paresthetica was assessed. [While the Veteran's attorney asserted in an October 2014 statement that he had neuropathy of the lower extremities secondary to diabetes diagnosed by the same examiner who diagnosed his type II diabetes mellitus in March 2001, the March 2001 private treatment records documenting the diagnosis of diabetes do not mention neuropathy.] In February 2004, a private treatment record noted that he was having cramps in his legs with difficulty walking; the assessments were lumbar disc disease and type II diabetes. In his April 2004 service connection claim, he alleged that due to diabetes he had developed pain in both legs as well as constant numbness and tingling. On a May 2006 VA Form 646, his then representative echoed the Veteran's contention that a complication of his diabetes mellitus was bilateral lower extremity numbness and tingling. On June 2011 VA examination he reported a gradual onset of burning of his toes approximately six years prior which became progressively worse.

Regarding the Veteran's now service-connected microalbuminuria, the following pertinent evidence is of record: A July 2006 VA treatment record notes his complaints of painless hematuria; a CT scan on that date failed to reveal the etiology of such. In May 2010, VA urine testing revealed a microalbumin level of 40 mg/L (which was noted to be elevated). In January 2011, VA urine testing revealed a microalbumin level of 94 mg/L (again elevated). In April 2011, a VA treatment record noted that his microalbumin was elevated, and that it was explained to him that his diabetes and blood pressure needed to be controlled in order to maintain his kidneys.

In light of the above, a medical opinion is needed regarding the date of onset of the Veteran's now service-connected left and right lower extremity peripheral neuropathy, and microalbuminuria.

Accordingly, the case is REMANDED for the following:

1. The AQOJ should ask the Veteran to identify the provider(s) of any additional (records of which are not already associated with the record) treatment or evaluation he has received for his claimed disabilities, and to provide all releases necessary for VA to secure any private records of such treatment or evaluation. The AOJ should obtain complete records of all such treatment and evaluation from all providers identified. The AOJ should specifically secure complete copies of the clinical records of all VA treatment the Veteran has received for his claimed disabilities since October 2012.

2. After the development sought in Instruction #1 is completed, the AOJ should arrange for a neurological examination of the Veteran to determine the etiology of any current left and right upper extremity disabilities, and the severity of his service-connected left and right lower extremity peripheral neuropathy. The Veteran's entire record must be reviewed by the examiner in conjunction with the examination. Regarding the lower extremities, the examiner should be provided a copy of the criteria for rating paralysis of the sciatic nerve (including 38 C.F.R. § 4.124a, Code 8520). Any indicated tests or studies must be completed. Based on review of the record and examination of the Veteran, the examiner must provide opinions that respond to the following:

(a) For the upper extremities, please identify (by diagnosis) each left and right upper extremity disabilities found. If no such disability is diagnosed, please reconcile that conclusion with the medical evidence in the record. Thereafter, please identify the most likely etiology for any/each left and right upper extremity disability entity diagnosed during the period of claim (including numbness of the right posterior shoulder, some mild cervical tenderness with numbness over the right lateral upper arm, and slightly decreased handgrip bilaterally documented by a private February 2004 private treatment record, as well as pain occurring in his right hand with paresthesia in the middle and ring finger and paresthesia in the right wrist documented by a February 2006 VA treatment record). Specifically, is it at least as likely as not (a 50% or better probability) that such disability is related to any incident of the Veteran's military service (to include confirmed exposure to herbicides therein), or was caused or aggravated (the opinion must specifically discuss the concept of aggravation) by his service-connected type II diabetes mellitus?

(b) For the lower extremities, please identify and describe in detail the manifestations of the Veteran's left and right lower extremity peripheral neuropathy, noting the existence of any complete paralysis and the severity (mild, moderate, moderately severe, or severe) of any incomplete paralysis, and specifically note any symptoms found that are not listed in the rating criteria (and their degree of severity and impact on function). In addition, the examiner must provide an opinion regarding the date of onset of the service-connected left and right lower extremity peripheral neuropathy, based on the pertinent evidence of record as outlined above.

The examiner must explain the rationale for all opinions, citing to supporting factual data (including relevant prior medical opinions) and medical literature, as appropriate.

3. After the development sought in Instruction #1 is completed, the AOJ should arrange for a diabetes mellitus examination of the Veteran to determine the severity of his service-connected type II diabetes mellitus and microalbuminuria. The Veteran's entire record must be reviewed by the examiner in conjunction with the examination. The examiner should be provided a copy of the criteria for rating diabetes mellitus (including 38 C.F.R. § 4.119, Code 7913) and renal dysfunction (including 38 C.F.R. § 4.115b). Any indicated tests or studies must be completed. Based on review of the record and examination of the Veteran, the examiner must provide opinions that respond to the following:

(a) Please identify and describe in detail the manifestations of the Veteran's type II diabetes mellitus, and specifically note any symptoms found that are not listed in the rating criteria (and their degree of severity and impact on function).

(b) Please identify and describe in detail the manifestations of the Veteran's microalbuminuria, and specifically note any symptoms found that are not listed in the rating criteria (and their degree of severity and impact on function). In addition, the examiner must provide an opinion regarding the date of onset of the service-connected microalbuminuria, based on the pertinent evidence of record as outlined above.

The examiner must explain the rationale for all opinions, citing to supporting factual data (including relevant prior medical opinions) and medical literature, as appropriate.

4. The AOJ should ensure that all of the development sought is completed, and then review the record and readjudicate the claims on appeal. If any remains denied, the AOJ should issue an appropriate supplemental SOC and afford the Veteran and his attorney opportunity to respond. The case should then be returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 







These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).