﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/20 Archive Date: 01/31/20

DOCKET NO. 190606-9629
DATE: January 31, 2020

ORDER

Entitlement to a 70 percent evaluation for posttraumatic stress disorder (PTSD), effective October 1, 2015, is granted.

Entitlement to a 20 percent evaluation from October 1, 2015 to February 14, 2017 for three to four painful scars from a right lower extremity fasciotomy, left lower extremity fasciotomy, and left anterior chest mastectomy scar is granted.

Entitlement to a 30 percent evaluation from April 19, 2017 for five or more painful scars from two right lower extremity fasciotomies, two left lower extremity fasciotomies, and left anterior chest mastectomy is granted.

Entitlement to an evaluation in excess of 10 percent from October 1, 2015 to February 14, 2017 and from April 1, 2017 for right lower extremity exercise-induced compartment syndrome, status post fasciotomy, is denied.

Entitlement to an evaluation in excess of 10 percent from October 1, 2015 to April 19, 2017 and from July 1, 2017 for left lower extremity exercise-induced compartment syndrome, status post fasciotomy, is denied.

Entitlement to a total disability evaluation due to individual unemployability (TDIU), is granted from October 1, 2015.

FINDINGS OF FACT

1. From October 1, 2015, the Veteran’s PTSD manifested as occupational and social impairment with deficiencies in most areas.

2. From October 1, 2015 to February 14, 2017, the Veteran was service connected for three painful, but not unstable, scars associated with bilateral lower extremity scars from fasciotomies in December 2014 and March 2015 and left chest mastectomy in August 2015.

3. From February 14, 2017 to April 19, 2017, the Veteran was service connected for four painful, but not unstable, scars, to include left lower extremity fasciotomy scar from December 2014, a right lower extremity fasciotomy scar from March 2015, a left chest mastectomy scare from August 2015, and a right lower extremity fasciotomy scar from February 14, 2017.

4. From April 19, 2017, the Veteran was service connected for five or more painful, but not unstable, scars, to include, bilateral lower extremity scars from fasciotomies in December 2014, March 2015, February 2017 and April 19, 2017, and a left chest mastectomy in August 2015; the Veteran was service connected for a sixth painful, but not unstable scar, on his left ear effective June 20, 2017.

5. The Veteran’s compartment syndrome of the right lower extremity, status post fasciotomy, did not manifest as moderately severe muscle disability from October 1, 2015 to February 14, 2017, or from April 1, 2017 to present.

6. The Veteran’s compartment syndrome of the left lower extremity, status post fasciotomy, did not manifest as moderately severe muscle disability from October 1, 2015 to April 19, 2017 or from July 1, 2017 to present.

7. The Veteran’s service-connected disabilities have prevented him from securing and following a substantially gainful occupation from October 1, 2015.

CONCLUSIONS OF LAW

1. The criteria for a disability rating of 70 percent for PTSD have been met from October 1, 2015. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411. 

2. The criteria for a disability rating of 20 percent for three or four painful scars have been met from October 1, 2015 to April 19, 2017. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.118, Diagnostic Code 7804.

3. The criteria for a disability rating of 30 percent for five or more painful scars have been met from April 19, 2017. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.118, Diagnostic Code 7804.

4. The criteria for an evaluation in excess of 10 percent for compartment syndrome of the right lower extremity have not been met from October 1, 2015 to February 14, 2017 or from April 1, 2017 to present. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.10, 4.27, 4.40, 4.45, 4.73, Diagnostic Codes 5311 & 5312.

5. The criteria for an evaluation in excess of 10 percent for compartment syndrome of the left lower extremity have not been met from October 1, 2015 to April 19, 2017 or from July 1, 2017 to present. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.10, 4.27, 4.40, 4.45, 4.73, Diagnostic Codes 5311 & 5312.

6. The criteria for entitlement to a TDIU are met from October 1, 2015. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.114, 3.155, 3.156, 3.400, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from August 2009 to September 2015.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review.

In May 2018, the Veteran opted to participate in the Rapid Appeals Modernization Program (RAMP), VA’s test program for implementing the AMA, selecting the supplemental claim review lane. A December 2018 RAMP rating decision assigned a 70 percent evaluation for PTSD effective April 2, 2018, assigned a 30 percent rating for painful scars effective August 22, 2018, continued a 10 percent rating for bilateral exercised-induced compartment syndrome; and deferred determining the Veteran’s entitlement to TDIU.

In December 2018, the Veteran filed a supplemental claim related to the issues adjudicated in the December 2018. In an April 2019 rating decision, the AOJ continued the 10 percent evaluations for the Veteran’s service-connected bilateral lower extremity compartment syndrome, continued the 70 percent evaluation for PTSD effective April 2, 2018, continued the 30 percent evaluation for painful scars effective August 22, 2018, granted entitlement to dependent educational assistance (DEA benefits) from April 2, 2018, and granted entitlement to TDIU effective April 2, 2018.

In April 2019, the Veteran filed a VA Form 20-0996 seeking higher-level review of the issues decided in the April 2019 rating decision with the exception of the effective date assigned for DEA benefits. A May 2019 rating decision (1) denied an earlier effective date for the assignment of a 70 percent evaluation for PTSD; (2) denied an earlier effective date for the 30 percent evaluation assigned for painful scars; (3) denied an earlier effective date for entitlement to TDIU; (4) continued a 10 percent evaluation for right lower extremity compartment syndrome; and (5) continued a 10 percent evaluation for left lower extremity compartment syndrome. In June 2019, the Veteran submitted his Decision Review Request (Board Appeal), selecting direct review by a Veterans Law Judge of those five issues. Because the Veteran requested direct review by the Board without submission of additional evidence and without a Board hearing, the Board’s decision is based on a review of the evidence of record at the time of the June 2019 rating decision. See 38 C.F.R. § 20.301. The favorable findings in the June 2019 rating decision are binding on the Board. See id. §3.104(c).

Increased Evaluations

Disability evaluations are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civilian occupations resulting from such diseases and injuries, and the residual conditions. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. Id. § 4.3. In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. Id. § 4.31.

The veteran’s entire history is reviewed when making a disability determination. Id. § 4.1. Where the veteran timely appealed the rating initially assigned for the service-connected disability, VA must consider whether the veteran is entitled to “staged” ratings to compensate him for times since filing his claim when his disability may have been more severe than at other times during the course of his appeal. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

1. Entitlement to an Evaluation in Excess of 50 Percent from October 1, 2015 to April 2, 2018 for PTSD

The June 2019 notice of disagreement stylizes the Veteran’s claim as entitlement to an effective date earlier than April 8, 2018 for a 70 percent evaluation for PTSD. The Board believes that the claim is better stylized as entitlement to an increased rating. In September 2017 correspondence, Veteran’s representative argued that the a 50 percent evaluation does not reflect the true residual severity of the Veteran’s PTSD. Following the December 2018 rating decision assigning a 70 percent evaluation, effective April 2, 2018, the Veteran’s attorney argued that the severity of the Veteran’s PTSD warranted a 70 percent evaluation for the entire period on appeal. Thus, the Veteran is seeking a higher rating from October 1, 2015 to April 2, 2018; he is not seeking effective date earlier than that assigned for his entitlement to service connection for PTSD, which is October 1, 2015.

Turning to the merits, April 2018 correspondence from the Veteran’s representative contends that an April 2018 private examination discusses his symptoms for the entire period on appeal and indicates that the severity of his PTSD symptoms more closely approximate a 70 percent evaluation than his current 50 percent evaluation back to October 1, 2015. The Board agrees.

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

The Board concludes that the evidence of the record, when read in light of the whole recorded history, shows that the Veteran’s symptoms more closely approximate a 70 percent evaluation than his current 50 percent evaluation from October 1, 2015. See 38 C.F.R. §§ 4.2, 4.7. 

In an August 2016 VA examination, the Veteran’s symptoms included difficulty in adapting to stressful circumstances, including work and a work like setting. This is consistent with a 70 percent evaluation rather than a 50 percent evaluation. The record documents that the Veteran’s inability to adapt to stressful situations drove him from his position as a bellhop with a hotel, the only job he has had since his separation from active service. The record similarly documents that the Veteran has at time been unable to be out in public due to his anxiety. For instance, May 2016 VA treatment records document that severe hypervigilance and anxiety required the Veteran to leave a big-box retail store. The treatment records further suggest that the Veteran was unable to leave his house for a period of days after that incident and only when accompanied by his spouse.

The August 2016 VA examination also notes that the Veteran is prone to irritability and angry outbursts when anxious. The Veteran’s difficulty controlling his anger is well-documented in his claims file. In April 2016, the Veteran reported to a VA social worker that he struggled with his anger on a daily basis. In May and June 2016, the Veteran reported continued struggles with irritability and anger. In April 2017, the Veteran was described as irritable with a nurse while seeking medical attention for his bilateral compartment syndrome. The Veteran’s struggles with his anger and irritability, given their severity, regularity, and persistence, support a 70 percent evaluation. 

The Veteran’s service-connected PTSD also impairs his familial relationships. He reported regular, repeated conflict with his spouse and children in April, May, and June 2016. According to the Veteran’s reports in May 2016, poor communication with his spouse and children contributes to his anxiety and unmet expectations that in turn cause him to act out in anger. The April 2018 private examination further documents that poor communication within the family often creates strife in the home. The Veteran and his spouse each have children from prior marriages and blending the two families has been not been easy, according to the examination report. The Veteran described these challenges as causing strain on the family and the marriage. The April 2018 private examination report further notes that the Veteran tends to isolate from his spouse and children in response to these episodes. Indeed, when his anxiety and anger are up, the Veteran intentionally says hurtful things in order to push others away. This tendency is particularly acute around holidays and family celebrations, such as birthdays.

In light of the foregoing, the Board concludes that the severity of the Veteran’s symptoms, viewed in their totality during the entire period on appeal, warrant a 70 percent evaluation from October 1, 2015. See 38 C.F.R. §§ 3.400, 4.2, 4.7, 4.130, Diagnostic Code 9411.

The record indicates that the Veteran is satisfied with the 70 percent evaluation. The Veteran’s June 2019 notice of disagreement does not raise the issue of the Veteran’s entitlement to an evaluation in excess of 70 percent at any time during the period on appeal. Thus, the decision herein satisfies the Veteran’s appeal as to this issue, and the Board will not address his entitlement to an evaluation in excess of 70 percent for service-connected PTSD.

2. Entitlement to a Compensable Rating for Service-Connected Scars from October 1, 2015 to August 22, 2018

Similar to his claim for an increased rating for PTSD, the Veteran’s June 2019 notice of disagreement seeks an earlier effective date for a 30 percent evaluation for the Veteran’s service-connected scars evaluated under 38 C.F.R. § 4.118, Diagnostic Code 7804. The Veteran is not seeking an effective date earlier than the October 1, 2015 effective date assigned for the non-compensable evaluation in the October 2016 rating decision. Thus, the Veteran’s claim is better stylized as entitlement to a compensable rating from October 1, 2015, the day after the Veteran’s separation from active service, to August 22, 2018, the effective date of the 30 percent rating.

The Veteran contends that he is entitled to an increased evaluation for his service-connected scars. Resolving reasonable doubt in the Veteran’s favor, the Board agrees.

Under Diagnostic Code 7804, a 30 percent rating is assigned with five or more scars that are unstable or painful. A 20 percent rating is assigned with three or four scars that are unstable or painful. A 10 percent rating is assigned with one or two scars that are unstable or painful. Note (1) defines an unstable scar as one where, for any reason, there is frequent loss of covering of skin over the scar. Pursuant to Note (2), if one or more scars are both unstable and painful, add 10 percent to the evaluation that is based on the total number of unstable or painful scars. Pursuant to Note (3), scars evaluated under diagnostic codes 7800, 7801, 7802, or 7805 may also receive an evaluation under this diagnostic code, when applicable. 38 C.F.R. § 4.118, Diagnostic Code 7804.

The Board notes that VA amended the criteria for rating skin disabilities effective from August 13, 2018. However, Diagnostic Code 7804 was not changed by the August 13, 2018, amendments.

Under 7805, scars, other; and other effects of scars evaluated under diagnostic codes 7800, 7801, 7802, or 7804, the evaluation for any disabling effect(s) not considered in a rating provided under diagnostic codes 7800-04 is to be considered under an appropriate diagnostic code. 38 C.F.R. § 4.118, Diagnostic Code 7805.

After a review of the evidence of record, the Board resolves reasonable doubt in the Veteran’s favor and concludes that a higher evaluation is warranted. The Veteran’s fasciotomy in February 2017 and April 2017 affect the rating assigned and divide the appeals period into two distinct periods requiring staged ratings. See Fenderson, 12 Vet. App. at 126.

A. From October 1, 2015 to April 19, 2017

An October 2016 rating decision granted service connection and assigned a non-compensable evaluation for three scars associated with the Veteran’s service-connected disabilities: an anterior, lateral right leg scar measuring 19cm x 0.7cm associated with a March 2015 fasciotomy for compartment syndrome; an anterior, lateral left leg scar measuring 18cm x 0.7cm associated with a December 2014 fasciotomy for compartment syndrome; and a left chest scar measuring 3.0cm x 0.5cm associated with an August 2015 left breast mastectomy.

(The September 2016 VA examination identifying and describing these scars also noted a left ear scar for March 2012 otoplasty. The Veteran was service-connected for that scar effective June 20, 2017. The effective date is after the period currently being discussed, and the left ear scar will be addressed below.)

The Veteran underwent a second right lower extremity fasciotomy on February 14, 2017. An August 2018 VA examination measured that linear scar on the medial aspect of the Veteran’s right lower extremity as 19cm in length and reported that it was tender to palpation.

The Board concludes that the Veteran had three painful, stable, scars from October 1, 2015 to February 14, 2017, and four painful, stable, scars from February 14, 2017 to April 19, 2017, the date of the Veteran’ second fasciotomy for compartment syndrome of the left lower extremity. While the September 2016 VA examination did not note that these three scars were painful or unstable, the Veteran reported tenderness on palpation of the three scars and the fourth scar incurred in February 2017 during an August 2018 VA examination. Those reports of tenderness on palpation cast doubt on the September 2016 VA examination report noting no pain. Scars tend to improve over time, and the Veteran’s reports of tenderness on palpation nearly two years after the September 2016 VA examination suggests that the scars may have been painful in September 2016. Thus, the Board will resolve reasonable doubt in the Veteran’s favor and conclude that three scars for which the Veteran was service connected from October 1, 2015 to February 14, 2017 and the four scars for which he was service-connected from February 14, 2017 to April 19, 2017 were painful. 

In light of the foregoing, a 20 percent evaluation is assigned from October 1, 2015 to April 19, 2017. See 38 C.F.R. §§ 4.3, 4.118, Diagnostic Code 7804.

B. From April 19, 2017

In April 19, 2017, the Veteran had a fasciotomy to address his service-connected compartment syndrome of the left lower extremity. According to an August 2018 VA examination, that surgery resulted in a linear scar on the medial aspect of the Veteran’s left lower extremity that measured 19cm. The Veteran reported that the scar was tender to palpation. Thus, as of April 19, 2017, the Veteran had five service-connected scars that were painful. Accordingly, a 30 percent evaluation is warranted from April 19, 2017. See 38 C.F.R. § 4.118, Diagnostic Code 7804.

As noted above, the Veteran was granted service connection for a scar on his left ear arising from an otoplasty in March 2012. The Veteran underwent a second left ear otoplasty in September 2016. The effective date for the grant of service connection for that claim was June 20, 2017. Thus, as of June 20, 2017, the Veteran was service connected for six painful, stable scars. This does not, however, change the Veteran’s rating because a 30 percent rating is the maximum rating permitted under Diagnostic Code 7804.

The Board has also considered the other Diagnostic Codes pertaining to scars. The Veteran is receiving a separate 10 percent evaluation for his left ear scar as a disfiguring scar evaluated under Diagnostic Code 7800. The Veteran does not contend that he is entitled to a higher rating under Diagnostic Code 7800. Moreover, the Veteran’s scars are superficial and not associated with underlying soft tissue damage, they do not cover an area or areas of 144 square inches or greater. Thus, Diagnostic Codes 7800 through 7802, both prior to and from August 13, 2018, are inapplicable. Finally, the Veteran does not have any disability not encompassed by Diagnostic Codes 7800 or 7804 for which a rating would be warranted under Diagnostic Code 7805.

3. Entitlement to an Evaluation in Excess of 10 percent for Bilateral Lower Extremity Exercise-Induced Compartment Syndrome

Muscle injuries are evaluated under the criteria of 38 C.F.R. § 4.73. Under diagnostic codes 5311 and 5312, disabilities resulting from muscle injuries shall be classified as slight, moderate, moderately severe or severe. 

Diagnostic Code 5311 address injuries to Muscle Group XI with identified functions of propulsion; plantar flexion of foot; stabilization of arch; flexion of toes; flexion of knee; posterior and lateral crural muscles; and muscles of the calf, including triceps surae (gastrocnemius and soleus); tibialis posterior; peroneus longus; peroneus brevis; flexor hallucis longus; flexor digitorum longus; popliteus; and plantaris.

Diagnostic Code 5312 address injuries to Muscle Group XII with identified functions of dorsiflexion; extension of toes; and stabilization of arch and involves the anterior muscles of the leg including the tibialis anterior; extensor digitorum longus; extensor hallucis longus; and peroneus tertius. A 30 percent rating is assigned for severe disability, a 20 percent rating for moderately severe disability, a 10 percent rating for moderate disability, and a 0 percent rating for slight disability. 

Disabilities resulting from muscle injuries are classified as slight, moderate, moderately severe or severe. A slight disability of muscles is a simple wound of muscle without debridement or infection. By history or complaint, service department records should demonstrate a superficial wound with brief treatment and return to duty and healing with good functional results. It is manifested by no cardinal signs or symptoms of muscle disability. Objective findings of such injuries include a minimal scar; no evidence of fascial defect, atrophy, or impaired tonus; and no impairment of function or metallic fragments retained in muscle tissue. 38 C.F.R. § 4.56 (d)(1).

A moderate muscle disability is a through-and-through or deep penetrating wound of short track from a single bullet, small shell, or shrapnel fragment, without the explosive effect of a high velocity missile, residuals of debridement, or prolonged infection. By history or complaint, there should be service department records or other evidence of in-service treatment for the wound; record of consistent complaints of one or more of the cardinal signs and symptoms of a muscle disability, particularly lowered threshold of fatigue after average use, affecting the particular functions controlled by the injured muscles. Objectively, a moderate muscle disability consists of: entrance and (if present) exit scars that are small or linear, indicating a short track of missile through muscle tissue; some loss of deep fascia or muscle substance or impairment of muscle tonus and loss of power or, lowered threshold of fatigue when compared to the sound side. 38 C.F.R. § 4.56 (d)(2).

A moderately severe muscle disability is a through-and-through or deep penetrating wound by a small high-velocity missile, or large low-velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring. By history or complaint, there should be service treatment records or other evidence showing hospitalization for a prolonged period for treatment of the wound; a record of consistent complaint of cardinal signs and symptoms of muscle disability; and, if present, evidence of inability to keep up with work requirements. Objective findings should reflect entrance and (if present) exit scars indicating track of missile through one or more Muscle Groups; indications on palpation of loss of deep fascia, muscle substance, or normal firm resistance of muscle compared with the sound side; or, tests of strength and endurance compared with the sound side, which demonstrates positive evidence of impairment. 38 C.F.R. § 4.56(d)(3).

If present, the following are also signs of a severe muscle disability: (a) x-ray evidence of minute, multiple scattered foreign bodies indicating intermuscular trauma and explosive effect of the missile; (b) adhesion of scar to one of the long bones, scapula, pelvic bones, sacrum, or vertebrae, with epithelial sealing over the bone rather than true skin covering in an area where bone is normally protected by muscle; (c) diminished muscle excitability to pulsed electrical current in electrodiagnostic tests; (d) visible or measurable atrophy; (e) adaptive contraction of an opposing group of muscles; (f) atrophy of muscle groups not in the track of the missile, particularly of the trapezius and serratus in wounds of the shoulder girdle; and, (g) induration or atrophy of an entire muscle following simple piercing by a projectile. Id. 

A 30 percent rating is assigned for severe disability, a 20 percent rating for moderately severe disability, a 10 percent rating for moderate disability, and a 0 percent rating for slight disability. 38 C.F.R. § 4.73, DCs 5311-5312.

The Veteran’s service-connected compartment syndrome of the right lower extremity and left lower extremity are the subject of staged ratings due to fasciotomies in early 2017. With respect to the right lower extremity, it was evaluated as 10 percent disabling from October 1, 2015 to February 14, 2017, the date of a second fasciotomy to address the Veteran’s symptoms. The Veteran was granted a temporary 100 percent evaluation from February 14, 2017 to April 1, 2017 for his recuperation from surgery. From April 1, 2017 to present, the Veteran’s right lower extremity compartment syndrome has been evaluated as 10 percent disabling.

The service-connected left lower extremity compartment syndrome was evaluated as 10 percent disabling from October 1, 2015 to April 19, 2017, the date of a second fasciotomy to address the Veteran’s symptoms. The Veteran was granted a temporary 100 percent evaluation from April 19, 2017 to July 1, 2017 to permit his recuperation from surgery. From July 1, 2017 to present, the Veteran’s left lower extremity compartment syndrome has been evaluated as 10 percent disabling. 

The periods prior to and following the Veteran’s second round of fasciotomies will be discussed in turn.

A. From October 1, 2015 to the Second Fasciotomies in February 2017 and April 2017

Based upon the evidence of record, the Veteran’s service-connected exercise-induced compartment syndrome of the right lower extremity and left lower extremity manifests as a moderate muscle injury from October 1, 2015 to February 14, 2017 and from October 1, 2015 to April 19, 2017 respectively.

The Veteran received a VA examination in September 2016. He reported that the disorder developed as foot pain and numbness in his big toes during basic training in 2009. The symptoms persisted during physical fitness training and rucking. The Veteran underwent anterior compartment fasciotomy for exercise-induced compartment syndrome in of his left lower extremity in December 2014 and for his right lower extremity in March 2015. The surgeries provided some relief, but the Veteran reported that his symptoms returned and persisted following his separation from active service.

The examiner identified the affected muscles as Group XII muscles—the anterior muscles of the leg responsible for dorsiflexion, extension of toes, and stabilization of the arch—and the post-fasciotomy symptoms described by the examiner are consistent with a 10 percent evaluation for moderate injury. According to the examiner, the cardinal sign and symptom of muscle injury related to compartment syndrome was fatigue and pain. These resulted in functional limitations associated with typical occupational tasks due to pain while standing and walking. The Veteran’s lower threshold for fatigue and pain are consistent with moderate injury. See 38 C.F.R. § 4.56(c), (d)(2)(iii). Symptoms consistent with moderately-severe injury were not observed. For instance, there was no atrophy, loss of strength, or loss of muscle substance or function in either lower extremity. See id. § 4.56(d)(3). 

VA treatment records similarly show that an evaluation in excess of 10 percent is not warranted for the period prior to the second bilateral fasciotomies in early 2017. In May 2016, the Veteran reported leg pain. The Veteran reported pain and stiffness following walking, running, or sitting for prolonged periods of time. On examination, the tone and bulk of the Veteran’s lower extremities were normal. In November 2016, the Veteran described constant pain and tightness that was worse with activity. While the Veteran’s pain worsened, the Veteran’s lower extremities did not show the cardinal signs and symptoms of moderately severe muscle injury on examination. The Veteran’s calves were described as “muscular,” no weakness or atrophy were noted, and the Veteran’s symptoms were described as “moderately limiting.” In April 2017 VA treatment records notes the Veteran’s symptoms to be calf pain with exercise. The symptoms associated with moderately-severe muscle injuries are not noted or described in the Veteran’s VA treatment records.

In light of the foregoing, an evaluation in excess of 10 percent is not warranted from October 1, 2015 to February 14, 2017 for the right lower extremity or from October 1, 2015 to April 19, 2017 for the left lower extremity. 

B. From April 1, 2017 and From July 1, 2017

The Veteran underwent fasciotomies for his right and left compartment syndrome in early 2017—February 14, 2017 for his right leg and April 19, 2017 for his left leg. The Veteran received temporary 100 percent ratings following those surgeries; from February 14, 2017 to April 1, 2017 for his right lower extremity, and from April 19, 2017 to July 1, 2017 for his left lower extremity.

Following those surgeries, the Veteran’s VA treatment records do not document further complaints of bilateral compartment syndrome. The Veteran was authorized to return to full activity as tolerated in May 2017, and September 2017 VA treatment records note that compartment syndrome had resolved.

The Veteran received a VA examination to assess the severity of his service-connected bilateral exercise induced compartment syndrome in August 2018. That examination supports the current 10 percent evaluation and does not show the severity of symptoms necessary to warrant an evaluation of 20 percent for moderately-severe disability. The Veteran described swelling and numbness with walking and after approximately 30 minutes of driving. The resulting functional loss was described as limiting his ability to run, walk distances greater than 50 yards, and to stand for more than 20 minutes. The cardinal signs and symptoms of muscle disability observed on examination were lowered threshold for fatigue and consistent fatigue-pain bilaterally. These symptoms accord with a 10 percent evaluation, and the cardinal signs and symptoms of moderately-severe muscle disability necessary for a 20 percent evaluation were not observed. For instance, the Veteran’s lower extremities showed no signs of muscle atrophy and his strength was 5-out-of-5 bilaterally. The examiner also noted that the Veteran did not use any assistive devices.

Accordingly, an evaluation of 10 percent is not warranted from April 1, 2017 for exercised induced compartment syndrome of the right lower extremity or from July 1, 2017 for exercised induced compartment syndrome of the left lower extremity. The Veteran’s claims for increased evaluations for these disabilities following temporary 100 percent ratings must be denied.

4. Entitlement to a TDIU from October 1, 2015

In light of the Board’s decision assigning an evaluation of 70 percent for PTSD from October 1, 2015, the Board concludes that the criteria for a TDIU are likewise met from October 1, 2015. The Veteran satisfies the schedular criteria as of October 1, 2015. See 38 C.F.R. § 4.16. The record shows that the Veteran could not pursue a substantially gainful occupation from October 1, 2015. See id. To the extent the Veteran worked as a bellhop for a two-month period following active service, the Board concludes that this constituted marginal employment and does not disqualify the Veteran from receiving a TDIU.

 

T.D. JONES

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Douglas M. Humphrey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.